# Lynn's Appeal.

A tenant for life has a right to work quarries or mines opened upon the land before the commencement of his life estate.

Such tenant may also cut timber in the process of clearing the land, or for other purposes required in the reasonable cultivation or repair of the premises.

To charge a tenant for life with waste committed to the injury of the remainder-man, the evidence must affirmatively show such facts as will sustain the charge. The presumption is in favour of the tenant for life until the contrary appears.

The rights and privileges of a tenant for life are much greater in Pennsylvania, than in England.

An executor cannot be charged as such with timber, coal, and limestone, taken from the land, while he occupied it under the tenant for life.

Where an executor or administrator pays over the funds coming into his hands to those entitled, within a reasonable time, he will not be chargeable with interest.

APPEAL from the Orphans' Court of *Fayette county*.

On the 31st August 1840, Ayres Lynn made his last will and testament, in writing, which was proved the 3d December of the same year, and in which he bequeaths all his personal estate, after payment of debts, to his wife Charlotte Lynn, and adds: "I also give and bequeath unto my wife Charlotte above named, all the profits and proceeds that may arise from all and every part of my real estate, during the term of her natural life." He also directed that, after the death of his wife, his real estate should be sold by his executors, and the proceeds divided among his children, deducting certain sums advanced by him to several of them. He appointed his son Isaac Lynn and John H. Tarr, executors, who accepted the trust, and proceeded to administer the personal assets. The widow continued to reside upon the farm until 1845, Isaac Lynn acting as her agent and manager, when she removed with her family to Union Town. Isaac Lynn, the executor, rented the farm from the widow, and continued in possession of it as her tenant till the spring of 1850, when she returned to the farm, and resided with her son, Andrew Lynn, upon it, they carrying on the farming operations together until 1853. At that time she rented one-half of the farm to Andrew, at $170 per year, and the other part was occupied by Isaac, but upon what terms does not appear in the testimony or report of the auditor. Charlotte Lynn, the widow, died intestate on the 6th January 1855, in the state of Illinois, at the residence of another son.

John H. Tarr, one of the executors, in 1851, removed to Knox county, Ohio, and has continued to reside there ever since.

[Lynn's Appeal.]

During the time that Isaac Lynn occupied the real estate under his mother, he sold licenses to various persons to dig coal and lime-stone, and to cut timber on the premises, amounting, according to the estimate of the auditor, to $212.37. These were sold princi-pally to persons residing in the neighbourhood, and were for the most part paid for in necessaries furnished to the family.

After the death of the widow, the executors sold the real estate, and Isaac Lynn filed his account, charging himself with the pro-ceeds received by him, and interest, amounting to $15,048.33, and praying credit for various items of expense, incurred in mak-ing the sale, &c. And also 5 per cent. on the amount as commis-sioner of the executors, amounting to $752.41. The conveyances of the real estate were made to the purchasers on the 1st April 1856; the first payment of one-third of the purchase-money made to the executor being $4735.33. This amount, or the greater part of it, was paid over to legatees, in June, August, and November 1856, and no interest was charged upon it in the account, as filed to December Term 1856.

To this account the legatees filed exceptions, alleging that the executor should have charged himself with the whole amount of the proceeds of the sale of the real estate, as the other executor had become a resident of another state. That he had not charged himself with the timber, limestone, and coal taken from the real estate since the death of the testator. To various items of credit, and especially the commission of the executors. And also that the accountant should have charged himself with interest on the first payment, from 1st April 1856.

The account and exceptions were referred to E. P. Oliphant, Esquire, as an auditor. He restated the account, charging the executor with the sum $212.37, for timber, coal and limestone taken from the farm during the life of the widow. He also struck out two small items of credit for which there appeared to be no vouchers; refused to charge the accountant with interest on the first payment; or to abate the commissions claimed.

To this report exceptions were filed by both parties; and the court below (GILMORE, P. J.) directed the account to be reformed, by reducing the commission of the executors to 4 per cent., and by charging interest for 4 months on first payment, amounting to $94; and with such alterations confirmed the report. And from this decree Isaac Lynn the executor appealed.

J. B. and A. Howell, for appellant.

Patterson, for appellee.

The opinion of the court was delivered by
LEWIS, C. J.—The executor of Ayres Lynn has been charged

[Lynn's Appeal.]

by the Orphans' Court with $212.37 for "timber, lime and coal, taken from the freehold, to the prejudice of the reversionary interests," while he was in possession of the land as the tenant of the widow, who held the estate for life.   If the coal mines and limestone quarries were open when the life estate commenced, it is very clear that the tenant for life had a right to work them. If the timber was cut in the process of clearing the land, or for other purposes required in the reasonable cultivation of it, or for keeping the premises in repair, it is not such waste as renders the tenant for life liable to the remainder-men.   It is not necessary in this case to decide whether a tenant for life has a right to open mines and quarries.   His privileges under the law of Pennsylvania are much greater than those recognised by the common law of England.   If he exceeds them, the Act of 10th April 1848, gives the remainder-men a right to apply to the Court of Common Pleas for a writ of *estrepement*.   That Act expressly declares that the tenant for life "shall not be restrained from the reasonable and necessary use and enjoyment of the land and premises in his possession," and authorizes that court to "inquire into and determine the nature and extent of said use and enjoyment."   As no complaint was made against Charlotte Lynn in her lifetime for the alleged waste committed by her tenant during the existence of her estate for life, and as the auditor has not found any facts which authorize the court to declare that he exceeded the rights of a tenant for life, we think he ought not now to be charged with these items in his account as executor.   What he did as tenant of his mother was not done in his capacity of executor.   The charges are not stricken out on that ground, but because no facts are found sufficient to support them.   The auditor cannot draw the whole law and the facts into his cognisance, so as to exclude the supervision of the court, by merely stating that the acts complained of were to the prejudice of the reversionary interests.

The presumption is in favour of the tenant for life until the contrary appears.

The auditor states sufficient reasons for not charging the accountant with interest, on the first payment, for the real estate sold under the power in the will, and his report in that particular ought to be confirmed.

The other objections to the decree of the Orphans' Court are overruled.

It is ordered that the decree of the Orphans' Court be reversed, and that the account, as restated by the auditor, be corrected by striking from the charges against the accountant the items for coal, timber and stone, amounting in the aggregate to $212.37, and by striking from the credit allowed for commissions the sum of $152.26.   With these corrections the auditor's report is confirmed, and a decree made accordingly.