## Murray's Estate.

*Mines and mining—Coal lease—Royalties—Decedents' estates.*

Where a lessor and a lessee at the time of the death of the former had treated a coal lease as in full force and effect without any election on the part of the lessor to forfeit it for breach of any of its conditions, and the lessee has substantially performed his covenants or made a bona fide attempt to do so, and the widow of the lessor has become entitled to one-half the royalties by electing to take against the will, and both the widow and the executor of the lessor have requested the court to find that the lease was a sale of coal in place, and the court so finds, the widow cannot be deprived of one-half the royalties received by the executor from the coal

that had been mined, by any action of his in attempting to declare a forfeiture of the lease after the death of the lessor.

Argued Oct. 12, 1906. Appeal, No. 143, Oct. T., 1906, by R. H. Murray, executor et al., from decree of O. C. Clarion Co., distributing royalties from sale of coal under a coal lease in Estate of W. P. Murray. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Exceptions on adjudication upon issue awarded by the orphans' court to the common pleas.

In the common pleas WILSON, P. J., found the facts to be as follows :

A dispute has arisen between the widow and collateral heirs of W. P. Murray, late of Callensburg, Pennsylvania, deceased, as to the distribution of the royalty from a certain coal lease, dated February 1, 1899, from W. P. Murray to E. N. Miller and alleged to have been in full force at the time of the death of W. P. Murray, on July 7, 1901. An issue was framed and certified from the orphans' court into the court of common pleas to determine the validity of said lease ; a jury was waived and the case submitted to the court for trial under the Act of April 22, 1874, P. L. 109. The widow, Elizabeth A. Murray, claims against the will and alleges that she is entitled to one-half of the royalty from the aforesaid lease which was a sale of the coal in place and converted it into personalty.

There are various questions of fact and law raised by the respective requests for findings, but independent of everything else in the case, the fact that the lease had not been forfeited in the lifetime of W. P. Murray, and that upon his death one-half of the royalty thereof descended to his widow, Elizabeth A. Murray, and that as against her, R. H. Murray, executor, had no right to declare a forfeiture and substitute a new lease therefor, is decisive of the present controversy.

The following indorsement appears on the lease in controversy : .

" June 2nd, 1900, for value received I hereby extend the provisions of this lease until August 1st, 1900.
                              " Signed : W. P. MURRAY,
                                 " H. F. MILLER."

This sentence as it stands alone is plain and free from ambiguity, but as applied to the lease upon which it is indorsed and the evidence in connection therewith is not plain, but ambiguous and requires parol evidence to construe it. Reading it by its letter and considering it alone it is possible that it could be construed as merely to refer to and extend the provision in the lease so as to be ready to ship coal from the land of Boston Gardner on or before August 1, 1900. The evidence shows that mining operations on the Boston Gardner farm were not commenced until May, 1900, and on June 2, 1900, the time had already expired by the letter of the lease by which the lessees were to be ready to ship coal from the Boston Gardner land, but the mining of coal on the Murray lease did not expire until February 1, 1901. The evidence also shows that W. P. Murray knew that in order to mine coal from under his farm on this lease, it was necessary first to go through the coal on the Boston Gardner farm. What is meant by this written extension or the effect thereof, is not clear; neither does the evidence of what was said and done by the parties at the time of the execution of this extension on June 2, 1900, make it absolutely clear how long the time was to be extended for mining coal on the W. P. Murray lease; as to whether it extended it from February 1, 1901, to June 2, 1902, as stated by H. F. Miller, or two years from August 1, 1900. However, it is clear, in our opinion, from the evidence, that the parties to this lease both did consider this extension to mean that the W. P. Murray lease was in full force and effect after the time limited in the original lease, to wit: February 1, 1901, and in view of the written extension, we think that the construction placed thereon by the parties should control.

It was shown that the entry in the coal mine reached the W. P. Murray lease and also that there was a check sent by the lessees for the royalty for the coal mined on the W. P. Murray lease, which was reached through one of the rooms from the Gardner farm on April 28, 1902, within less than two years from the time of the extension on June 2, 1900, and that the lessee mailed this check to W. P. Murray, which check was returned and destroyed and a new one issued in place thereof to R. H. Murray as executor.

No question arose in the lifetime of W. P. Murray, between

the parties to this lease, as to either a forfeiture or as to the length of time given by the extension, and, therefore, at the time of the death of W. P. Murray this lease was in full force. At that time the interest of Elizabeth A. Murray in this lease became vested and it is as of that date when her rights are to be tested on the present question.

It is apparent from all of the evidence in this case that the surrender of the old lease by the lessees was under the belief and on the strength of the statement made to them that it was done with the consent of the widow, but not in any way admitting that there had been a forfeiture thereof prior thereto. The lease would only be evidence of the contract between the parties and the mere surrender of the paper would not alter or change the rights of the different parties thereunder. The evidence shows that at the time W. A. Hindman, Esq., wrote the letter, on December 28, 1901, to C. J. Tighe, one of the lessees, he was not attorney for the widow, Elizabeth A. Murray, and had no authority to represent her and, therefore, his acts in reference to obtaining this new lease and the surrender of the old lease would not be binding upon her, and it is not now contended by the defendant to the contrary. The letter from W. A. Hindman, Esq., and the testimony of R. H. Murray, allege a forfeiture in the lifetime of W. P. Murray, deceased, not because the lessees had not reached the Murray coal at the time of the alleged surrender of the old lease, but there is no competent evidence to sustain a forfeiture by W. P. Murray.

The lease in controversy by its terms is a demise of all the coal under the W. P. Murray farm of 186 acres in Toby township with the right to mine and remove the same, and is a sale of the coal in place and a conversion or severance of the same prior to the death of W. P. Murray and, therefore, his widow would be entitled to her dower interest therein, even if the coal was not opened or mined in the lifetime of the decedent: Dorr v. Reynolds, 26 Pa. Superior Ct. 139.

She would be entitled to her dower therein of the undivided one-half, jointly with the other owners thereof, and R. H. Murray, either for himself or as representing the other joint owners of the estate of W. P. Murray, would have no right to declare a forfeiture of this interest of the widow therein if such action

would be injurious to her or if such forfeiture was in any sense a fraud upon her: Wilson v. Goldstein, 152 Pa. 524, and Hein-ouer v. Jones, 159 Pa. 228.

After the receipt of the letter of November 13, 1901, from the counsel for the executor, the widow had a right to believe that if she refused to accept under the will that she would be entitled to one-half of the royalty from this coal lease, and it is to be presumed that she had this in view when she made her election, and if, by the alleged forfeiture and surrender of the old lease and substitution of a new one signed by R. H. Murray, executor, it would defeat the right of the widow to her dower interest in the coal under this farm, it would certainly be to the interest of the said R. H. Murray and against the interest of the widow and a fraud upon her.

The lease, inter alia, contains the following proviso: " Second party further agrees that if he abandons lease for one year after he has commenced operations of mining, then this lease to be forfeited if demanded by first party. Further if he fails to comply with the terms of this lease then it is to be null and void." This condition was in the interest of the lessor and made the lease voidable at his option, but the forfeiture was not self-operating and was not exercised by any positive act or in any way by the said W. P. Murray and, therefore, the lease remained in full force and effect at the time of his death and subsequent thereto: Westmoreland, etc., Natural Gas Co. v. De Witt, 130 Pa. 235; Wills v. Manufacturers' Natural Gas Co., 130 Pa. 222; Ray v. Natural Gas Co., 138 Pa. 576; Cochran v. Pew, 159 Pa. 184.

These and other late cases on the same subject, as applied to the first lease, are not in conflict with the principles declared in the earlier case of Brown v. Vandergrift, 80 Pa. 142.

Where the lessees show a substantial performance or a bona fide attempt to perform, such as in the present case, a lessor is held to a very strict exercise of the right to forfeit the lease, and usually the law abhors a forfeiture: Kreutz v. McKnight, 53 Pa. 319.

Conversations and circumstances may be proved to explain ambiguities, and parol testimony of the surrounding circumstances at the time of the transaction out of which the writing arose is admissible to aid in the interpretation of a lease:

Douthett v. Fort Pitt Gas Company, 202 Pa. 416; Gilmor's Appeal, 154 Pa. 523; Miller v. Fichthorn, 31 Pa. 252.

Declarations of a deceased person against his interest are admissible, but self-serving declarations, in the absence of the other party to the controversy, are not.

The foregoing principles and cases are not in conflict with the cases cited on the brief of the defendant in support of the defendant's requests for findings of law.

The respective points of fact and law and answers thereto, are filed and attached hereto and made part of the record.

And now, October 2, 1905, it is hereby directed that counsel for plaintiff prepare a decree in accordance with the foregoing opinion.

On the findings of fact and conclusions of law certified from the common pleas to the orphans' court, the court entered a decree awarding to Elizabeth A. Murray one-half of the royalties received by the executor from the sale of the coal.

*Error assigned* was the decree of the court.

*W. A. Hindman*, with him *F. J. Maffet* and *Harry M. Rimer*, for appellant.—The construction of the lease in controversy is controlled by the recent decision of this court in the case of Coolbaugh v. Lehigh, etc., Coal Company, 213 Pa. 28.

*Don C. Corbett*, with him *A. A. Geary* and *H. E. Rugh*, for appellee, cited: Wettengel v. Gormley, 160 Pa. 559; Caldwell v. Fulton, 31 Pa. 475; Brown v. Beecher, 120 Pa. 590.

OPINION BY MR. JUSTICE BROWN, January 7, 1907:

In the issue directed to the common pleas it was found that the agreement between W. P. Murray, the testator, and E. N. Miller, dated February 1, 1899, was recognized by the former up to the time of his death as being a valid and existing one, in full force and effect; that he had not elected to forfeit the lease for breach of any of its conditions; that at the time the appellee presented her petition on which the issue was granted the lease was in full force and effect as to her, the widow of W. P. Murray; and that there had been a substantial performance, or a bona fide attempt at performance, by the lessees of

the covenants contained in the original lease and agreement of extension. The appellee, who was the plaintiff in the issue, requested the court to find as a matter of law that the agreement between her husband and Miller was a sale of the coal in place. The appellants, who were the defendants, made a similar request. The court found what each of the parties requested. The finding, without a request from either, would not have been error in determining the rights of the appellee. When the findings of the common pleas were certified to the orphans' court it would have been error to refuse the decree awarding the appellee one-half of the royalties received by R. H. Murray, executor, from the sale of the coal that had been mined, less his commission for collecting and paying the same. Decree affirmed and appeal dismissed at appellants' costs.