516 A.2d 392

James R. DOVERSPIKE and Carl Doverspike, t/d/b/a J.C. Enterprises, a partnership,

v.

Donald E. CHAMBERS and Shirley Chambers, his wife, Elizabeth Herberline and Robert C. Chambers, Co-Executors of the Estate of Mary E. Chambers, Deceased.

Appeal of Donald E. CHAMBERS and Shirley Chambers, his wife.

Donald E. CHAMBERS and Shirley Chambers, his wife, Appellants

v.

James R. DOVERSPIKE and Carl Doverspike, t/d/b/a J.C. Enterprises, a partnership

v.

Elizabeth HERBERLINE and Robert C. Chambers, Co-Executors of the Estate of Mary E. Chambers, Deceased.

Superior Court of Pennsylvania.

Argued March 24, 1986.

Filed Oct. 15, 1986.

540

E.J. Strassburger, Pittsburgh, for appellants.

Louis Emanuel, Pittsburgh, for appellees.

Before ROWLEY, WIEAND and DEL SOLE, JJ.

## OPINION OF THE COURT

ROWLEY, Judge:

This case arose out of the execution of an oil and gas lease by life tenant Mary E. Chambers in favor of the developer, James R. Doverspike and Carl Doverspike, t/d/b/a J.C. Enterprises (Doverspike). The remaindermen to the estate are Mary E. Chambers' son, Donald E., and his

wife, Shirley (remaindermen). Upon the death of the life tenant, the remaindermen brought an action of trespass against Doverspike for trespass and conversion, and later amended their action to include a request for declaratory judgment, seeking to be declared the owners of the gas rights to the estate. Doverspike brought an action in equity against the remaindermen and the estate of the life tenant seeking both a preliminary and final injunction to to enjoin the remaindermen from interfering in the operation of the gas wells, a declaratory judgment declaring itself to be the owner of the gas rights in the real estate, and damages for breach of warranty by the life tenant.

The actions were consolidated by an order of court dated February 3, 1983, and both parties thereafter moved for summary judgment. The trial court granted Doverspike's motion for summary judgment, denied remaindermen's motion for summary judgment, and entered judgment for Doverspike. Thereafter, the remaindermen filed exceptions to the order granting and denying summary judgment and petitioned for reconsideration of the order entering judgment. The petition for reconsideration was granted, and thereafter, the trial court confirmed its initial decision and denied the exceptions advanced by the remaindermen on reconsideration.

The remaindermen then filed the appeal at 898 Pittsburgh, 1985 in which they raise two issues: 1) whether the trial court erred in granting summary judgment based on the open mine doctrine; and 2) whether they were entitled to summary judgment because the lease did not comply with the Statute of Frauds. Doverspike raised the additional issues at 899 Pittsburgh, 1985 of whether, if the lease terminated with the death of the life tenant, the remaindermen have any interest in the property or improvements of Doverspike, and if the remaindermen are the owners of the wells, whether the doctrine of unjust enrichment requires them to compensate Doverspike for the benefit they have been granted.

On review of an order granting summary judgment, an appellate court needs to determine only whether there is a

genuine issue of triable fact. *Bowman v. Sears, Roebuck and Co.*, 245 Pa.Super. 530, 369 A.2d 754 (1976). The granting of the summary judgment can be sustained only if the pleadings, depositions, answers to interrogatories and admissions plus any affidavits show that there is no genuine issue as to a material fact and that the moving party is entitled to a judgment as a matter of law. *Jeffries v. McCague*, 242 Pa.Super. 76, 363 A.2d 1167 (1976).

The following undisputed facts are established in the record. By deed dated May 29, 1970, Donald B. Chambers and his wife, Mary E. Chambers, conveyed two tracts of land, totalling approximately one hundred and eight acres, to their son, Donald E. Chambers, and his wife, Shirley. The deed contained the following reservations:

ALSO EXCEPTING AND RESERVING a life estate in the above described premises unto Donald Brooks Chambers and Mary Evelyn Chambers, his wife, for and during their natural lifetime of both the said Donald Brooks Chambers and Mary Evelyn Chambers, his wife.

ALSO EXCEPTING AND RESERVING from both of the above described tracts the coal and mining rights and release of damages as heretofore sold and conveyed and/or excepted and reserved.

ALSO EXCEPTING AND RESERVING unto Donald Brooks Chambers and Mary Evelyn Chambers, his wife, for and during the natural lifetime of both the said Donald Brooks Chambers and Mary Evelyn Chambers, his wife, the gas rentals and/or royalties.

The deed also stated that the real estate was "UNDER AND SUBJECT" to outstanding gas and oil leases."

Life tenant Donald B. Chambers died on January 14, 1971. On November 18, 1976, surviving life tenant, Mary E. Chambers, executed an oil and gas lease in favor of Doverspike. Although the remaindermen did not sign the November 18, 1976 lease, Donald E. Chambers at least minimally assisted his mother, the surviving life tenant, in negotiating the lease with Doverspike. The time period of

the lease, as stated therein, was "for the term of 2 years from this date and so long thereafter as oil or gas is produced from the premises or as operations continue for the production or storage of oil and gas." Within the lease period, Doverspike drilled two of the three wells specified in the lease. In 1979, the life tenant and Doverspike entered into a lease extension, and by August of 1981, the third well was completed. On May 19, 1982, Mary E. Chambers died, thus vesting the fee simple interest in the one hundred and eight acres in the remaindermen.

## I.

The remaindermen first argue that the open mine doctrine permits a life tenant to operate mines or wells which were open and producing before the creation of the life estate. Because the wells in this case were not open before the creation of the life estate, the remaindermen argue that it was improper for the trial court to apply the open mine doctrine. The remaindermen also argue that it was error for the trial court to *sua sponte* raise the issue of the applicability of the open mine doctrine. We hold that the open mine doctrine is inapplicable here, and because there are issues of fact, it was error to grant the summary judgment as a matter of law.

The open mine doctrine states that "tenants for life, only, may not open new mines or take minerals from the premises, except in cases of mines opened by the former owner. This was recognized in *Westmoreland Co.'s Appeal*, 85 Pa. 344...." *Marshall v. Mellon*, 179 Pa. 371, 375, 36 A. 201, 201 (1879). The reasoning behind the doctrine is that if the life tenant did open new mines, he would be committing waste, whereas if he simply continues to use mines of the former owner, he is then merely enjoying the use of the land in the same manner in which it was enjoyed when his estate came into being. *See: Bruner Estate*, 363 Pa. 552, 70 A.2d 222 (1950); *Knox's Estate (No. 1)*, 328 Pa. 177, 195 A. 28 (1937); *Eley's Appeal*, 103 Pa. 301 (1883); *Lynn's Appeal*, 31 Pa. 44 (1857); and 51 Am.Jur.2d *Life Tenants and Remaindermen*, § 154 (1970).

■ The open mine doctrine is not a rule of law but rather is an aid in the construction and interpretation of documents pertaining to mineral rights. In function it is very much like evidentiary presumptions or the rules of statutory construction found in 1 Pa.C.S. §§ 1501–1991. The open mine doctrine is not paramount to the grantor's express intent concerning the life tenant's rights to the proceeds or development of open mines in a deed or lease. *See: Bruner Estate (No. 1),* 328 Pa. 177, 195 A. 28 (1937); *Murray's Estate,* 216 Pa. 270, 65 A. 675 (1907); *Eley's Appeal,* 103 Pa. 301, (1883). "The application of the open mine doctrine to conventional life estates, where the creating instrument is silent as to the rights of the life tenant to the proceeds of the development of open mines is, therefore, the result of the judicially ascertained intent of the creator of the life estate." William and Meyers, *Oil and Gas Law,* § 513 (Abridged Ed.1984). The doctrine should only be invoked if the grantor's intent as to the life tenant's rights cannot be clearly understood from the face of the document or if the document is silent as to the rights intended to be afforded to the life tenant.

■ In the case at hand, the deed creating the life estate contains precise, express provisions from which the intent of the grantors can be clearly understood. The deed which created the life estate specifically stated that the transfer was "UNDER AND SUBJECT to outstanding oil and gas leases. ALSO EXCEPTING AND RESERVING unto Donald Brooks Chambers and Mary Evelyn Chambers, his wife, for and during the natural lifetime of both the said Donald Brooks Chambers and Mary Evelyn Chambers, his wife, the gas rentals or royalties." The deed's language is clear that when Donald B. Chambers and Mary E. Chambers transferred the real estate, not only did they intend to preserve their rights under existing leases, but they reserved, in an additional clause beginning with the word "also", the right to gas rentals or royalties. Therefore, it is clear that the grantors intended to give the life tenants the power to execute leases in addition to those already existing. This

fact can be ascertained by examination of the deed entered in the record. Because the express provisions of the deed are dispositive of the grantors' intent, it is not necessary to apply the open mine doctrine as a rule of construction. *See: Cronan v. Castle Gas Co., Inc.,* 354 Pa.Super. 381, 512 A.2d 1 (1986) (where the "interest created ..." was *not* clear and free from ambiguity, the Court applied the open mine doctrine).

Because the open mine doctrine is inapplicable here due to the clear, precise language of the deed which specifically reserved for the life tenant the rights under existing mineral leases and the right to gas rentals and royalties, it is not necessary for us to address the remaindermen's argument regarding the applicability of the open mine doctrine where there is only a lease, and no drilling, prior to the commencement of the life estate.[1] Having determined that the open mine doctrine is inapplicable, we now address the real issue raised in the motion for summary judgment: whether the life tenant alone had the right to execute mineral leases for a period in excess of her own life tenancy.

■■■ Although the trial court and Doverspike apply the open mine doctrine to resolve this issue, the open mine doctrine is also inapplicable here. The open mine doctrine applies, if at all, to establish whether the life tenant had the right to enter into leases and receive rents and royalties for mineral production during his or her life tenancy. The open mine doctrine is inapplicable to determine the *duration* of those leases entered into by the life tenant. Thus, here, where the issue is whether or not the mineral leases executed by the life tenant alone expired with the death of the life tenant, the open mine doctrine is not relevant.

■■ To determine whether the life tenant had the right to execute mineral leases for a period in excess of her own life, we first consider the intent of the parties as manifested in the language of the operative documents. *See: Lake Erie Gas Coal & Coke Co. v. Patterson,* 184 Pa. 364, 39 A.

---

1. *See: Cronan v. Castle Gas Co., Inc.,* 354 Pa.Super. 381, 512 A.2d 1 (1986) for a discussion of the merits of this issue.

68 (1898). Unlike the intent to reserve a lease-making power in the life tenant, there is no language in the deed or the lease which would indicate any party's intent to extend the lease given by the life tenant beyond her life. Thus, we cannot say as a matter of law that the life tenant had the authority to bind the remaindermen to a mineral lease after the termination of her life estate and after the remaindermen became owners in fee of the real estate.

The trial court presented no other authority to support its conclusion that the remaindermen were bound beyond the death of the life tenant to a lease to which they were not a party. Because there is nothing in the deed to warrant the conclusion that the remaindermen are bound by the life tenant's lease, because the open mine doctrine is inapplicable to bind the remaindermen, and because the trial court has relied on no other authority to bind the remaindermen, evidence must be supplied to indicate whether the parties intended to extend the lease beyond the death of the life tenant. This evidence will have to be presented at trial so that the trier of fact can determine the intent of the parties. Because there is a material, disputed issue of fact, the trial court erred in granting the summary judgment.

## II.

The remaindermen's second argument is that the trial court erred by not granting summary judgment for them on the basis that the lease is unenforceable because it does not comply with the Statute of Frauds. However, Doverspike has raised numerous reasons both in its pleadings and by affidavit in opposition to the remaindermen's motion for summary judgment, which are factually disputed, as to why the Statute of Frauds is inapplicable. These include whether the life tenant, who executed the lease, was an agent of remaindermen, whether partial performance was such as to take the lease out of the Statute of Frauds, and whether the facts show that the remaindermen are equitably estopped from asserting the Statute of Frauds.

Moreover, "while it is true that ordinarily the death of the Lessor terminates the lease, 'the whole question in

each case is one for construction, and must depend upon the intention of the parties.' *Billings' Appeal*, 106 Pa. 558." *Lake Erie Gas, Coal & Coke Co. v. Patterson*, 184 Pa. 364, 368, 39 A. 68, 69 (1898). If the intention of the parties shows that the lease was not to terminate at the life tenant's death, the Statute of Frauds will not render the lease unenforceable because the lease executed by the life tenant did comply with the Statute of Frauds. Because of the material factual issues which must be resolved in order to determine whether the Statute of Frauds applies here, it was proper for the court to deny the remaindermen's motion for summary judgment on the basis of the Statute of Frauds.

■ Because we find that summary judgment should not have been granted and because the case must be remanded for trial, at which time evidence on the disputed issues of fact can be presented and the trier of fact can make factual findings, we find it unnecessary to address Doverspike's arguments which are based on the assumption that the remaindermen are in fact the owners of the wells and that the lease terminated at the death of the life tenant.

Summary judgment is vacated. Case remanded for trial. Jurisdiction is relinquished.