## Crozer's Estate.

Argued September 25, 1939. Before KEPHART, C. J.,
MAXEY, LINN, STERN and BARNES, JJ.

*Robert von Moschzisker,* for appellant.

*Robert T. McCracken,* with him *William H. Lathrop,
J. Allen Hodge, Benjamin Ludlow, Montgomery & Mc-
Cracken, Thomas B. K. Ringe, John Arthur Brown,
Howard B. Lutz* and *W. A. Schnader,* for appellees.

OPINION BY MR. CHIEF JUSTICE KEPHART, November
27, 1939:

The circumstances associated with these three appeals
are much the same, and all may be considered in one
opinion. The basic question in each is: Should divi-

268

dends from coal leasing or coal mining companies representing net income without deductions for depletion or depreciation be apportioned between life tenants and remaindermen, or, in other words, between principal and income? It is unnecessary to state the various estates, for life and in remainder, created by Samuel A. Crozer and his son John P. in their respective wills. Samuel died in 1910, and John in 1926. Their wills created the trusts in question, and under their authority the trustees were to pay the net income to the several life beneficiaries.

During the life of Samuel, he organized an unincorporated association, later incorporated, to lease coal lands, and three incorporated coal and coke companies, the latter being operating companies. The Crozer family had a controlling interest in all these companies then, and has today under the various wills. Upon the death of Samuel and John, their shares of stock in these companies were given to trustees to form a part of the corpus of the trusts under consideration, and it is the dividends from these shares which are claimed in whole by the life tenants, and in part by the remaindermen. Shortly after these companies were organized, which, of course, was before 1910, Samuel and John, as officers and directors, procured the setting aside, from time to time, of a part of the net profits of each company in an account called the "Investment Account." This, presumably, represented a depletion account which was set up to keep intact the original value of the stock of each company. In allocating a part of the revenues from the several enterprises, no fixed percentage was established; the amounts placed therein fluctuated as the directors determined. The directors continued to add varying sums to the investment accounts, the monies of which were invested in outside corporate securities, until June, 1937, at which time, in a letter to their stockholders, they stated that during the depression years some dividends had included accumulated earnings, and that this policy

had not resulted in any impairment of the liquidity of the companies. This letter is alleged to mark a change from the former policy of setting aside part of the net profits, before depletion, in the investment accounts. The net profits were paid to the trustees in dividends and these in turn were paid to the life beneficiaries.

It is at this point that the guardian and trustee ad litem excepted, contending that both Samuel and John had, in their lifetimes, as officers and directors of the companies, intended that the remainder estate should be protected by having a substantial part of the profits set aside by the corporations to principal and that, the directors having changed this policy, the trustees should now assume the burden of protecting the remaindermen by allocating a portion of the dividends to corpus. The auditing judge dismissed this contention and awarded all of the dividends to the life tenants, holding that *Knox's Estate (No. 1)*, 328 Pa. 177, was finally determinative of the question.

It is unnecessary here to review *Knox's Estate*, as it was so recently decided. It considered exhaustively the subject of dividends of "wasting asset companies." Senator Knox owned 1,600 shares of stock in a mining company. These were made part of the corpus of a testamentary trust. The company, through its directors, had set up a depletion fund during the lifetime of the testator, and after his death paid dividends partly out of this reserve fund. The trustees put that portion of these dividends paid from the depletion fund into corpus for the benefit of remaindermen. We held that the life tenants were entitled to all dividends that were paid from the depletion fund, and they were so awarded. In the course of the opinion, we had occasion to review the authorities on dividends from "wasting asset companies," and income from "wasting assets." We there said (pages 183-184, 185) : "It has long been an established principle in this state, so rigidly enforced it is now a rule of property *(McFadden's Estate,* 224 Pa. 443, 447), that

where the owner of land, containing minerals, creates a legal life estate with the remainder over, the life beneficiary is entitled to retain for himself all proceeds derived from the operation of the mines, without making provision for a fund to offset depletion. . . . The fact that the ownership is represented by shares of stock does not alter the rule. There is no sound reason for a distinction between the former ownership [ownership of an undivided interest] in personam and that represented by shares of stock."

In the present cases we find nothing in the wills that would indicate that the testators desired to depart from the rule of property indicated in that opinion. When they directed the "net income" to be paid to the life beneficiaries, a presumption was instantly raised that all dividends were intended for the then beneficiaries of the shares, the life tenants: *Boyer's Appeal*, 224 Pa. 144, 152. We have so often stated that a man's widow and children are the primary objects of his bounty (see *Opperman's Estate (No. 1)*, 319 Pa. 455, 459) that it is unnecessary to repeat it.

In apportionment cases, under our settled rules, the rights of the parties must be determined in the light of the intent of the creator of the trust when it is possible to ascertain his purpose from the instrument creating the trust and the surrounding circumstances. Appellant contends that the surrounding circumstances here in evidence are such as would cause us to apply a different rule of law to the instant cases. There may be administrative acts, as we have said, of corporate authorities which might cause a change in the rule of property stated in *Knox's Estate*. See *Opperman's Estate (No. 1)*, 319 Pa. 455. But the circumstances here do not impress us as being of that character. The action of the boards of directors in discontinuing the investment accounts no more compels us to resort to apportionment of the dividends than did the action of the board of directors in *Knox's Estate* in declaring dividends in part out of the

depletion fund. The corporate acts in both cases are consistent with the character of a "wasting assets" company.

The supposed difference between *Knox's Estate* and the instant case is this: Had Senator Knox, a stockholder, *been a director* in the Cerro de Pasco Corporation at the time the depletion account was being set up, under appellant's theory, the court would have been compelled to sustain the remaindermen's claim and apportion the dividends. Here we are asked to carry over the acts of the testators as officers and directors of these companies to their estates as expressive of testamentary intention. This would extend very widely the doctrine of "surrounding circumstances," as the distinction between a stockholder and a director in matters concerning their personal estates would not be such as to import an intention that corporate policies should control, in one case, the interpretation of a will, and not in the other. If appellant's theory were sustained the rule of property noted above would be easily overthrown. We can see no distinction between *Knox's Estate,* where the decedent held stock while a depletion reserve was set up, and these cases, where Samuel and John Crozer held stock in the mining companies when the same sort of a reserve was set up. The only factual difference is that the Crozers were officers of the board of directors and Knox merely a stockholder, but that cannot control in the interpretation of the wills here nor change the rule of law which we have indicated. The acts of the Crozers in serving as officers and directors must be considered as separate and apart from their individual acts in personal affairs: *Flinn's Estate,* 310 Pa. 206, 211. These corporations and the association are separate and distinct entities from their officers and stockholders. The acts of the testators as corporate officers cannot be made a criterion to support the claim of "surrounding circumstances" which would cause the rule of property here in question to be set aside, requiring an apportionment of

these dividends. Whatever they may have intended the corporate policy to be, they knew it was subject to change and that, if the reserve fund was abandoned or payments were made out of accumulated earnings, the rule of property in this State would require such dividends to be paid to the life tenants. Having made no contrary provision for such contingency in their wills, their acceptance of that rule of property seems clear.

Moreover, the amounts paid into these investment funds varied at the discretion of the directors. They did not in any true sense represent reserves for depletion and depreciation. Obviously their purpose was not to amass a huge surplus for the benefit of ultimate shareholders or remote beneficiaries at the expense of present shareholders and immediate beneficiaries. Monies were paid into and taken out of these investment funds during the lifetime of John at the discretion of the directors, thus indicating that the accounts were not considered by him as being intended for the future enjoyment of the remaindermen.

We are, therefore, all of one mind, that our decision in *Knox's Estate* controls. So holding, we think the court below was correct in its conclusion on the question, and in its further conclusion that the accountant should not be directed to sell at an appropriate time the stocks of these companies, nor to place values on these stocks as of June 7, 1937, so that the proper rate of interest might be paid to the life beneficiaries as income, and the balance placed in a special fund to protect the corpus from diminishment in value.

The decrees of the court below are affirmed; costs to be paid by the estate in each appeal.

Mr. Justice SCHAFFER took no part in the hearing, discussion or decision of the case.