**HUMBLE OIL & REFINING COMPANY,**
**Appellant,**

**v.**

**Mabel W. MARTIN, Annie M. Kelly, Sue Kelly Mee, W. J. Vollor, Landman Teller, James P. Biedenharn, L. C. Gwin and R. D. Kuehnle, Appellees.**

**No. 18579.**

United States Court of Appeals
Fifth Circuit.

Dec. 29, 1961.

**164**

M. M. Roberts, Joe A. Thompson, W. H. Morrow, Hattiesburg, Miss., for appellant.

Landman Teller, of Teller, Biedenharn & Rogers, Vicksburg, Miss., L. C. Gwin, of Gwin & Kuehnle, Natchez, Miss., for appellees.

Before CAMERON and WISDOM, Circuit Judges, and THOMAS, District Judge.

CAMERON, Circuit Judge.

Appellees Mabel W. Martin, et al[1] filed this action to recover damages for drainage and waste alleged to have been committed by Humble to appellees' one-thirtieth undivided interest in a vested remainder in Berkely Plantation on which appellant had drilled a number of oil wells and had captured and removed large quantities of oil. The court below entered judgment in favor of appellee, finding that she was the owner of the one-thirtieth vested interest in Berkely as remainderman, that the trustees under the will of appellee's mother Anna S. C. Martin, who died December 3, 1942, had no power to execute an oil and gas lease to Humble covering appellee's interest; that appellee had never executed any oil and gas lease or other conveyance to Humble; and that appellee was entitled to recover the value of one-thirtieth of the oil removed by Humble in the past and that to be removed in the future less the actual production cost. By stipulation of the parties the court retained jurisdiction to fix the amount of damages due appellee.

The court below wrote an excellent opinion, now published in 199 F.Supp. 648, and we adopt this opinion as expressive of the views of this Court on the issues raised before the court below and repeated before us. Many of the questions of law and fact presented to the court below had been decided by the Supreme Court of Mississippi in the case

---

1. The seven appellees other than Mrs. Martin claimed as assignees of undivided interests in any recoveries which might result from this action, the consideration being legal services rendered. Sometimes, Mrs. Martin alone will be referred to as appellee.

of Martin, et al. v. Eslick, et al., 229 Miss. 234, 90 So.2d 635, 92 So.2d 244, this being a suit for construction of the will of Mrs. Anna F. C. Martin brought by the executor-trustee to which all interested persons became parties. The facts are fully set forth in this decision by the Supreme Court of Mississippi, and reference is made to it and to the opinion of the court below for the facts. We will not repeat them, except as they are necessary in the consideration of the points relied upon by Humble which we shall discuss.

At the threshold lies the question arising from appellant's contention that the court below was without jurisdiction by reason of the absence of indispensable parties whose presence would destroy diversity jurisdiction. Appellee Mabel W. Martin was and is a citizen of the State of Florida, and appellant a corporation under the laws of the State of Texas. Appellant claims that by will, Anna F. C. Martin devised to her daughter Mrs. Anna F. B. Eslick and upon her death to her son Frederick Martin Eslick a life estate in Berkely, which interest the testatrix directed be held and managed by her trustees, for these life tenants with the remainder to her direct heirs. The corpus of the estate, under the order of the Supreme Court in Martin v. Eslick, supra, vested as of the date of her death in the children of the testatrix, of which appellee Mabel is one. Appellant claims that the two life tenants and the remainderman other than appellee, all residents of Mississippi, are indispensable parties whose presence would destroy diversity jurisdiction inasmuch as the appellees other than Mabel W. Martin are residents of Mississippi. Appellees insist that said parties are not indispensable, because appellees are asserting no claim against the life tenants

or the other remaindermen, but are seeking to recover nothing but a money judgment against Humble, their co-tenant, for the net value of the oil removed by Humble from the one-thirtieth interest in said oil which vested in Mabel W. Martin upon the death of the testatrix.[2]

■ Under Mississippi law, as declared in Martin v. Eslick, supra and the cases cited by the lower court in its opinion, oil in place is real property and title to all of the mineral interests of the testatrix in Berkely vested, as of the time of her death, in the remaindermen; and the holders of the life estate and the trustees for them had no interest in the royalties arising from Humble's production of oil from the lands in question beyond any income which might be derived from the investment of this royalty income by the trustees. It was undisputed, and the court below found, that the holders of the life estate, the trustees and all of the remaindermen except appellee Mabel Martin, had executed oil and gas leases to Humble; but that Mabel Martin had never given Humble any lease or other conveyance covering her one-thirtieth interest in these minerals, but had specifically refused to do so.

■ The court below was correct in holding, therefore, that this controversy was solely between appellees and Humble and that appellees were not claiming anything at all against the life tenants or the remaindermen who had conveyed their mineral interests to Humble. All concede that Humble had the right to produce oil and gas from Berkely subject to its duty to account to Mabel Martin and her assignees for the portion of the minerals owned by them.

The court below discussed the Mississippi cases laying down the rule that the

2. The appellant admits in its brief that such is the sole claim of appellees:
  "The plaintiffs claim that they are entitled to the damages for waste based upon $\frac{1}{30}$th of the value of oil, gas and other minerals produced or to be produced by the defendant from the lands in question and identified as of value in ex-

cess of $100,000 (R. 8). The prayer is for an accounting, for a declaratory judgment requiring the payment to the plaintiffs at reasonable intervals $\frac{1}{30}$th of the market value of all oil, gas and minerals produced from the lands after the date of the judgment (R. 9)."

life tenants and the other remaindermen were not indispensable parties to this action. It was right and proper that this be done, because the character of the ownership by the parties of the minerals involved is determined by Mississippi law. The trial court also adverted, in passing, to some of the cases decided by this Court on the question of indispensable parties. We think it would be helpful if we would amplify that aspect of the problem by listing additional cases by this Court on the subject inasmuch as this is basically a federal question, 3 Moore's Federal Practice, pp. 2152–2153.

In the case of Estes v. Shell Oil Co., 1956, 234 F.2d 847, we analyzed a number of Fifth Circuit cases and, based upon them, reversed the judgment of the lower court granting a motion to dismiss for absence of indispensable parties. The case there was much stronger in favor of holding the absent parties indispensable than is this one. Estes claimed to own an interest in lands from which Shell had been, for many years, producing oil, refusing to account to him for his portion of the production. In its motion to dismiss and the affidavits attached thereto, Shell showed that there were many asserted owners of mineral and royalty interests in the land who were not joined as defendants with Shell, some of whom were residents of the same State as Estes. It was not disputed that their claims of ownership of the mineral interests involved did clash with those of Estes—a claim not made here. But we held that the trial court should hear the case brought by Estes and so mold its decree as to grant him whatever relief the facts might show him to be entitled to, while at the same time protecting the interests of the parties not before the court. We distilled the rule from the other cases mentioned and stated it in general terms (234 F.2d 852):

"It [Shell] would like to have before the Court all parties to whom it conceives it may be called upon to answer if plaintiff is successful; or to have the action dismissed because that cannot be done without destroy-

ing diversity jurisdiction. It does not lie with a defendant so to take hold of plaintiff's litigation and conduct it according to defendant's ideas and to suit its purposes. The choice of a forum belongs primarily to a plaintiff and it is our duty to sustain a chosen jurisdiction unless there is some legal reason why this should not be done. Certainly no valid reason has been brought forward here.

"It is clear that the complaint sets forth facts and prays for relief touching a controversy between plaintiff and defendant with respect to which the others mentioned are not shown by the proof to be indispensable. * * * "

The whole question of indispensable parties in actions involving oil royalties and the land from which the oil had been taken was exhaustively discussed by Judge Sibley in his opinion in Hudson, et al. v. Newell, et al., 1 Cir., 1949, 172 F.2d 848. The Hudsons, citizens of Texas and Louisiana, asserted that they were the owners of a large body of land in Mississippi on which oil had been found. They brought four actions against residents of Mississippi who were claiming to own the fee and against some of their royalty assignees. Gulf Refining Company was the lessee of the oil, gas and mineral rights by conveyances from all of the individual parties sued. The Hudsons sought by their actions to cancel all of the conveyances, including those supporting the title of the parties claimed to be indispensable whose presence would destroy diversity jurisdiction. This Court held that such actions could not be maintained as against those parties on the ground that no action to cancel a cloud upon title to real estate could be maintained unless all claiming to own an interest therein were made parties defendant to the action.

But we there reversed a ruling of the court below dismissing the entire bill of complaint, because we held that the action for a money judgment against Gulf Refining Company, mineral lessee of all

of those mentioned in the last paragraph, for the value of the oil extracted from these lands, was maintainable. We discussed a large number of cases including many from this Court and based the decision upon them, holding that there was no conflict between them and the cases relied upon by appellant here.

This Court considered many decisions from this Circuit arising in Mississippi and relied upon by both litigants here as well as cases from the Supreme Court of the United States, in the recent decision of Mackintosh v. Marks' Estate, 5 Cir., 225 F.2d 211, involving Louisiana mineral interests. We quote some unconnected excerpts from pages 214–215 of this opinion:

"Plaintiffs are entitled to any relief which the facts justify even though that relief has not been asked and that theory has not been advanced in the pleadings. * * *

"It was said by this Court in Seeley v. Cornell, 5 Cir., 74 F.2d 353, 356: 'it is within the powers of a court of equity to deprive a party of the benefit of a deed or judgment obtained by fraud without their being set aside.' The power of a court of equity so to mold its decree as to do complete justice between the parties without adversely affecting those not before the court is exceedingly broad and elastic.

"We hold that the district court erred in requiring all persons having or claiming any interest in the lands to be made parties, and in dismissing the suit upon plaintiffs' failure to join those whose joinder would have defeated the jurisdiction of the court. Instead, the court should retain jurisdiction and limit any relief granted to such as can be given without prejudice to the absent parties."

And see Bowdoin v. Malone, 5 Cir., 287 F.2d 282, 285–286.[3]

Applying briefly the foregoing principles to the specific contentions of appellant here, it is plain that: appellee has owned since December 3, 1942 an undivided mineral interest in Berkely; that Humble endeavored to induce appellee to sell to it a lease on said interest and that appellee refused; that Humble has produced large quantities of oil from the lands in which appellee owned an interest and has failed to account to her for her portion of the oil extracted; and that this action is entirely between her and Humble for such an accounting. It is further plain that the other remaindermen will not be affected adversely or at all by the relief sought by appellee and that granted by the court, as the complaint and the judgment relate solely to appellee's interest.

As to the life tenants and their trustees, they have never owned any part of the oil underlying Berkely or that removed from it, and they have had no interest in the oil operations except as they might interfere with the life tenant's use of the surface. That use is not involved in what appellee sought in this action against Humble and what the court below adjudicated. Additionally, the life tenants and their trustees had executed a lease to Humble fixing their rights as against Humble. Nor was the right of the life tenants and their trustees to collect interest from the investment of any royalty money which might accrue from the leases then outstanding involved in the action before us.[4]

---

3. In both Hudson and Mackintosh we distinguished a number of the same cases appellant relies on here, e. g., Keegan v. Humble, 5 Cir., 155 F.2d 971, and Calcote v. Texas P. C. & O. Co., 5 Cir., 157 F.2d 216, 167 A.L.R. 413.

4. Appellant stresses the provision in the order entered by the Supreme Court of Mississippi:
"* * * the said trustee J. Gaillard Martin who has survived his brother, Francis C. Martin, is empowered and directed to collect any royalties *payable under said oil, gas and mineral leases* as such trustee; and, subject to the approval of the Chancery Court of Harrison County, Mississippi, he is hereby authorized to reinvest said funds and to pay the interest derived from the investment of said funds to the beneficiaries under said trust." [Emphasis added.]

This order of the Supreme Court of Mississippi covered only royalties arising from leases which had been given by the trustee, the life tenants, and all of the remaindermen except appellee. The order did not cover or purport to cover the interest of appellee, which alone is dealt with in the judgment now before us, based upon appellee's claim against Humble for waste. Any rights the life tenant or the trustee may have against appellee growing out of their relationship with appellee remain unimpaired and unaffected by the judgment entered by the court below. We are not passing upon the question whether any rights do or do not exist in favor of the trustee and the life tenants against the appellee. We merely say that the judgment before us does not affect those rights in any way.

Appellee contends that she stands in a different position from the other remaindermen who joined with the life tenants and their trustees in giving or confirming an oil lease to Humble; that by so doing, they confirmed the right of the trustees to receive from Humble the royalties arising from the interests of the consenting remaindermen.

■ She contends further that all of the questions now raised by appellants could have been brought before the court below if those parties asserted by Humble to be indispensable had entered their appearances and asserted their claims in the course of the trial by the lower court, or if Humble had brought them in as parties to the action. Rules 14, 19(b) and 24, F.R.Civ.P., 28 U.S.C.A. She argues further that the record shows that the trustees, the life tenants and the other remaindermen were available to Humble, as it was able to procure their attendance as witnesses as well as to obtain affidavits from them. We do not reach this question, as it was not presented to or passed upon by the court below.

Under the foregoing facts and authorities, it is clear that the court below did have jurisdiction to entertain the com-

plaint appellee brought before it and to enter judgment thereon.

■ It remains but to consider whether the court below erred in holding that the executors-trustees under the will of the testatrix, acting without order of the Chancery Court, were without power to execute to Humble an oil, gas and mineral lease which would prejudice or affect in any way appellee's rights with respect to her undivided one-thirtieth interest; and that appellee was entitled to maintain this action for waste against Humble. We do not think that the court erred in so doing.

That portion of the opinion, written by the able district judge, who has practiced law in Mississippi all of his years before going on the bench, is a sufficient exposition of the rationale of the holding. The authorities cited by him are ample to sustain it. We would add but a few words to what the court below so well expressed.

The following quotation taken from the section of American Jurisprudence referred to by this Court in Crabb et al. v. Commissioner of Internal Revenue, 5 Cir., 121 F.2d 1015, 1016, combined with a portion of § 300 of the same text state succinctly the principles which were relied upon by the court below:

"It is well settled that legal life tenants, whether the owners of conventional estates created by act of the parties or the owners of life estates arising by operation of law, as well as equitable life beneficiaries of trusts, have no right to open and work, or have operated for their benefit, mines or mineral deposits which constitute unopened mines in legal contemplation, because such conduct would be a lasting injury to the inheritance. This rule is applicable not only to metals, metallic ores, and coal, but also to oil and gas * * *. [33 Am.Jur., Life Estates, Remainders, Etc., § 328]

"The general rules as to the relative rights of life tenants and re-

mindermen in solid minerals have been stated in many cases to apply to minerals of fugitive natures such as oil and gas. It is established, practically without dispute, that a life tenant has no right to exploit the gas and oil resources of the property for his own benefit, or to authorize, by lease or otherwise, another to do so, where such exploitation had not been begun or authorized before the commencement of the life estate * * * As the rule is sometimes expressed, the life tenant has no right to open new wells where none had been opened or authorized before the commencement of the life estate. The fact that possibly, by the operations upon neighboring lands, all the gas will be taken before the remaindermen come into possession, cannot affect their right to prevent the taking by the lessee or grantee of the life tenant. Authority to take gas and oil from the property, where no wells were opened at the time of the creation of the trust, cannot be conferred upon the life tenant by a trustee empowered to manage, lease, and control the property, for the purpose of paying for necessary repairs, taxes, and expenses, the net annual proceeds to be paid to the life tenant. The remaindermen may recover damages in an action of waste against one who is a grantee of only the life tenant, and may enjoin conduct on the part of a lessee from the life tenant alone * * *."

[Ib. § 330, pp. 834–835.] [5]

We do not find that appellant has brought forward any convincing authority contrary to these principles. Indeed it is clear that Mississippi is aligned with them and that no authority can be found holding that under its laws, the trustee for a life tenant can make an oil lease the effect of which is to convey oil in place and confer upon the lessee the right to remove the same. It is further clear, as held by the court below, that the rights already exercised by Humble to remove oil from Berkely derive from the leases given by the remaindermen other than appellee. Nothing in the instruments executed by the testatrix or in the decision of Martin v. Eslick, supra, casts any doubt upon the holding of the court below, which with these few additional comments, we accept and affirm.

Being of the opinion that the court below had jurisdiction to try the issues dealt with in its opinion and judgment, and that the holding made by it and the reasons given are consonant with the Mississippi law applied to the facts of this case, its judgment is affirmed, and the cause is remanded, as stipulated by the parties, for determination of the damages.

Affirmed and remanded.

DANIEL HOLCOMBE THOMAS, District Judge, dissents.

---

5. These principles are supported by the cases collected in an annotation in 18 A.L.R. 2d 100, pp. 115 et seq.