**Velma NUTTER, Appellant,**

v.

**Virginia Dale STOCKTON, Appellee.**

No. 52498.

Supreme Court of Oklahoma.

March 24, 1981.

**862**

M. Marcus Holcomb, Holcomb, Holcomb & Harkins, Buffalo, for appellant.

Bryce Hodgden, Hieronymus, Hodgden & Halley, Woodward, for appellee.

1. *Lawley v. Richardson*, infra.

DOOLIN, Justice:

■ The "Open Mine Doctrine" permits a life tenant to receive all the profits from a mining operation on his land when the mineral lease was granted prior to and extends into his tenancy.[1] The doctrine has been applied to oil and gas leases as well.[2] The question presented for resolution is whether exclusive right to profits during his life permits a life tenant to grant a *new* lease after the *original* lease has expired, without consent of the remainderman? We hold it does not and affirm the trial court.

■ Beuna Gass executed a two-year oil and gas lease on the land in question in May 1973. Mrs. Gass died in September 1973. By her will she granted a life estate in the land to Velma Nutter (plaintiff), with the remainder in fee to Virginia Dale Stockton (defendant). No wells were drilled and the lease expired by its own terms in May 1975.

Plaintiff sought to grant a new mineral lease to the property but defendant refused to ratify said lease. Plaintiff sought court action to apply the open mine doctrine in order to legitimize the lease and bind the remainderman. However, the trial court sustained defendant's demurrer and judgment was entered dismissing plaintiff's action, whereupon plaintiff appealed to this Court.

One of the earliest references to the theory behind the open mine doctrine is found in William Blackstone's Commentaries, a description of the English common law written in the 18th Century:

> "To open the land to search for mines of metal, coal, etc., is waste; for that is a detriment of the inheritance: but, if the pits or mines were open before, it is no waste for the tenant to continue digging them for his own use; for it is now become the mere annual profit of the land."—William Blackstone's Commentaries, Vol. 2, Section 282.

2. *In re: Shailer's Estate*, 266 P.2d 613 (Okl. 1954).

The philosophy entered Oklahoma law in the 1924 case of *Lawley v. Richardson, 101 Okl. 40, 223 P. 156, 159*, when a unanimous Supreme Court held the following:

" ... a life tenant takes the land in the condition in which it was when the estate vested to him, and that he is entitled to all of the rents and profits which may accrue from the lands by reason of minerals which may be produced from mines or wells existing at the time of the death of the testator, or which may be produced from mines or wells opened under authority of conveyances executed prior to the vesting of the life estate. The life tenant has no authority by his own acts to obtain a profit on income from the land which would result from an injury to the inheritance, but he is entitled to the income and profits from the land when it is produced by reason of conditions which have been fixed by the deceased prior to his death, although the production of the same may result in an injury to the inheritance."

Many cases seem to hinge their acceptance of the doctrine on the "intention" of the grantor: that by granting a life estate on producing land (or on land he had leased for production), he intended for the life tenant to have the profits, absent declarations to the contrary.

Our problem adds another wrinkle: would the grantor have "intended" for the life tenant to have authority to grant a new lease once the old one expired?

The Texas courts have answered this in the negative. *Moore v. Vines, 474 S.W.2d 437, 440 (Tex.1971)*, said "[T]he open mine doctrine is not applicable beyond the lease in existence at the time of the vesting of the life estate." *Moore* reasoned it could find no evidence to attribute an intention to the grantor that the land should continue to be leased for mineral development beyond the term of the original lease, to the detriment of the remainderman.

At least one authority on oil and gas law has stated the dilemma as one of emphasis between two different interpretations:

"There is uncertainty as to the result if the lease, which existed at the time the life estate began, terminates after the life estate has begun. If emphasis be given to the *grantor's intention* to the effect that he intended that the land be dealt with as he had dealt with it, it would follow that the life tenant, acting alone, would have the power to give a valid lease after the termination of an existing lease and would be entitled to all the proceeds payable under such subsequent lease. If, on the other hand, emphasis be given to the factor that wells are drilled under *the authority of an existing lease* which is the equivalent of an open mine, then it is apparent that such authority for opening mines or drilling wells no longer exists after termination of the outstanding lease, and the life tenant, acting alone, would not be entitled to lease again and enjoy the proceeds of a subsequent lease." (Emphasis added).— Kuntz, Oil and Gas (1962), § 8.2 (page 177).

The 10th Circuit (in an opinion authored by the late Judge Murrah) interpreted Oklahoma law to resolve that "uncertainty" expressed by Professor Kuntz against the life tenant:

"The historical rule against waste by a life tenant or a homestead occupant seems to militate against the opening of new mines or the drilling of new wells, after the vesting of the estate, and to confine new exploration to authority expressed or clearly implied at the time of the vesting of the estate." *Heyser v. Frankford Oil Company, 316 F.2d 441 (10th Cir., 1963).*

*Heyser* noted this court in *Lawley v. Richardson, supra*, spoke only to the right of the homestead occupant to "receive, collect, and use in her own right the royalties arising from oil and gas wells developed under a lease executed prior to the death of the deceased."

*Heyser* concluded thusly:

"Upon the surrender of the outstanding oil and gas lease, all rights thereunder reverted to the heirs, subject of course, to the exclusive right of homestead occupancy." 316 F.2d 444.

In agreement is the 5th Circuit which, in the 1961 case of *Humble Oil & Refining Co. v. Martin, 298 F.2d 163,* said:

"It is well settled that legal life tenants ... have no right to open and work ... mines or mineral deposits ... because such conduct would be a lasting injury to the inheritance ... As the rule is sometimes expressed, the life tenant has no right to open new wells where none had been opened or authorized before the commencement of the life estate."

A search of the sparse record in our case brings a similar conclusion. It appears from the final decree in the probate of Beuna Gass' estate that the defendant is the sole heir to Mrs. Gass and that the plaintiff and defendant are the only two devisees/legatees with plaintiff receiving the life estate in the real property in question plus certain other personalty located on the property. Defendant received all else, including both real and personal property. The oil and gas lease is a standard form, giving no indication of lessor's intentions as to life interests.

The record is void of evidence as to the intent of Mrs. Gass granting authority to the life tenant to do with the land as she willed, to the exclusion of the remainderman. In fact, in light of the blood relationship between Mrs. Gass and the defendant, and the disposition of the will, one might well be led to the assumption that Mrs. Gass wished the land to go intact to the defendant, her granddaughter, following the life estate.

Concluding there is no evidence Mrs. Gass intended to grant the life tenant more authority over the land than existed, we find no error in the trial court's ruling.

AFFIRMED.

IRWIN, C. J., BARNES, V. C. J., and WILLIAMS, LAVENDER, SIMMS, HARGRAVE and OPALA, JJ., concur.

HODGES, J., dissents.