512 A.2d 1

**Samuel R. CRONAN and Dorothy A. Cronan, His Wife, Appellants,**

v.

**CASTLE GAS COMPANY, INC., a Corporation, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 20, 1986.

Filed June 9, 1986.

Reargument Denied July 25, 1986.

Petition for Allowance of Appeal Denied Dec. 15, 1986.

382

George A. Conti, Jr., Greensburg, for appellants.

Wayne A. Kablack, Indiana, for appellee.

Before BROSKY, OLSZEWSKI and POPOVICH, JJ.

OLSZEWSKI, Judge:

This appeal arises from a final decree and judgment, entered November 2, 1984, dismissing appellants' excep-

tions to the Findings of Facts, Conclusions of Law, and Decree Nisi of the Court of Common Pleas of Indiana County. Appellants had filed exceptions to the court's order of June 18, 1984, denying the requested injunction against appellee and refusing to grant monetary damages. A brief recital of the facts of this case will be helpful.

Appellants, Samuel R. Cronan and Dorothy A. Cronan, purchased a tract of land from Joseph M. Frye, et ux., by deed dated November 29, 1972. This deed contained the following reservation clause:

EXCEPTING AND RESERVING to M.V. Lias all of the oil and gas in, under and upon the said premises for and during the term of his natural life as excepted and reserved in the recital deed.

Similarly, the deed by which Frye had purchased this tract from M.V. Lias in 1971 contained the following reservation clause:

EXCEPTING AND RESERVING to the grantor herein all the oil and gas in, under and upon the said premises for and during the term of his natural life. Upon his death said oil and gas interest shall forthwith pass to and be vested in the grantees herein named, their heirs and assigns.

In 1963, Lias had entered into a ten-year oil and gas lease with the Manufacturer's Light and Heat Company. This lease was recorded, but no activity was conducted on the land. On September 28, 1972, Lias entered into a ten-year oil and gas lease with Columbia Gas Transmission Corporation. This lease was to take effect on April 2, 1973. On or about June 15, 1980, appellee entered appellants' land for the purpose of drilling gas wells. Appellee constructed a roadway and two well sites, one of which was actually drilled. Subsequent to the drilling, the well was outfitted and treated, the roadway was backfilled, and any trees that were disturbed were cut and stacked for the appellants. Appellants brought this action alleging damage to their land, crops and timber.

 Initially, we are faced with the question of whether the exception and reservation clause in the subject deed excepted and reserved to the grantor/life tenant (M.V. Lias) the right to enter into a subsequent oil and gas lease and to produce oil and gas thereunder without the joinder of the remainderman. As a general rule, a life tenant cannot produce oil and gas without the joinder of the remainderman, as such independent production would constitute waste:

Absent special conditions (e.g., the existence or threat of drainage, the opening of mines before the creation of the life estate, a power of consumption of the corpus given the life tenant or the creation of the life estate without impeachment of waste), the life tenant is without the right to develop the minerals, either personally or through a lessee, by reason of the fact that this constitutes waste.

*Oil and Gas Law*, Williams & Meyers, Vol. 2, page 636.1, Sec. 512.1. It is a recognized exception to this rule that a life tenant may operate oil and gas wells, mines and quarries if they were opened before his life estate began. *See Crozer's Estate*, 336 Pa. 266, 9 A.2d 535 (1939); *Knox's Estate*, 328 Pa. 177, 195 A. 28 (1937). In such a case, the Open Mine Doctrine entitles the life tenant to continue operation of the opened mine and retain the proceeds of such operation. This doctrine is justified by the principle that a life tenant is entitled to enjoy the land in the same manner as it was enjoyed before the creation of the life estate. *Oil and Gas Law, supra,* Vol. 2, page 646.1, Sec. 513.

 In this case, however, the oil and gas mine was not physically opened before the life estate began. There had been no drilling though the land had been leased. This lease, despite the absence of actual drilling operations on the land, is sufficient to constitute the opening of mines under the Open Mine Doctrine. *See Oil and Gas Law, supra,* Vol. 2, page 648, Sec. 513. It can be determined from the granting of a lease that the grantor contemplated

the use of the land for the extraction of oil and gas, and the mine is considered open. Since Lias leased the oil and gas rights in 1963 for a ten-year period, and created a life estate in these rights when he sold the property to Frye in 1971, there was a lease of the oil and gas rights in effect when the life estate was created. Thus, the Open Mine Doctrine certainly applied at that point.

■ Appellants' contention is that the expiration of the first lease in 1973 terminated the applicability of the Open Mine Doctrine, and Lias could not enter a new lease as such was not permitted by either the exception and reservation clause or existing law. It is uncertain under the Open Mine Doctrine how the expiration of the lease without actual production would affect Lias' rights as life tenant to produce oil and gas. One commentator has reduced the argument to the following set of circumstances:

> There is uncertainty as to the result if the lease, which existed at the time the life estate began, terminates after the life estate has begun. If emphasis be given to the grantor's intention to the effect that he intended that the land be dealt with as he had dealt with it, it would follow that the life tenant, acting alone, would have the power to give a valid lease after the termination of an existing lease and would be entitled to all proceeds payable under such subsequent lease. If, on the other hand, emphasis be given to the factor that wells are drilled under the authority of an existing lease which is the equivalent of an open mine, then it is apparent that such authority for opening mines or drilling wells no longer exists after termination of the outstanding lease, and the life tenant, acting alone, would not be entitled to lease again and enjoy the proceeds of a subsequent lease.

*The Law of Oil and Gas*, Kuntz, 8.2, page 177. We find that the weight of existing law favors emphasis upon the grantor's intent, and thus the Open Mine Doctrine continues in effect in this case.

Interpretation of the exception and reservation clause of the deed will determine the parties' rights thereunder, and

in construing such an instrument the law provides that "our primary object must be to ascertain and effectuate what the parties intended." *Brookbank v. Benedum-Trees Oil Company,* 389 Pa. 151, 131 A.2d 103 (1957); *see Lawson v. Simonsen,* 490 Pa. 509, 417 A.2d 155 (1980). A rule of construction of deeds provides that in ascertaining the intention of the parties, the language of the deed should be interpreted "in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed." *Brookbank,* 389 Pa. at 157, n. 6, 131 A.2d at 107, n. 6. Looking to the intent of Lias in reserving a life estate in the oil and gas on the property, we find that it was his intention that the right to produce oil and gas would continue throughout his life tenancy. Thus, the granting of a second lease did not terminate the applicability of the Open Mine Doctrine.

First, we note that at the time the life tenancy was created, a lease had been in effect for eight years for the production of oil and gas. Oil and gas will not disappear if not immediately mined, so the absence of any drilling operations did not indicate that Lias had abandoned any hope of eventual production. Secondly, Lias entered into a second ten-year lease agreement in September of 1972, such lease to take effect immediately upon the expiration of the first lease in April of 1973. Viewing the exception and reservation clause in light of those circumstances of its creation, we find an intention on the part of Lias to retain his rights to produce oil and gas on appellants' land for the duration of his life tenancy.

Appellants' argue, nevertheless, that the case of *Nutter v. Stockton,* 626 P.2d 861 (Okla.1981), mandates a different decision. We disagree. *Nutter* involved a similar factual situation in which the Open Mine Doctrine was interpreted in an oil and gas case where a lease had expired and the life tenant wished to grant another lease. *Id.* In *Nutter,* Mrs. Beuna Gass, the grantor, executed a two-year oil and gas lease on a parcel of land and she died in the same year. Mrs. Nutter was left a life estate in the land in question.

Following the expiration of the two-year lease, Mrs. Nutter attempted to grant a new mineral lease despite the fact that no actual drilling had occurred. *Id.* Oklahoma's Supreme Court held that the Open Mine Doctrine would not apply beyond the lease in existence, as there was no evidence that the grantor (Mrs. Gass), intended to grant the life tenant (Mrs. Nutter) authority to do with the land as she pleased to the exclusion of the remainderman. *Id.* at 864.

It is important to note that the Oklahoma Court based its decision on the intent of the grantor in granting the life tenancy. Without more, the granting of the lease could not support a finding that the grantor intended that the life tenant should have the benefits of the Open Mine Doctrine. In the case at bar, however, the grantor and life tenant are the same person. From Lias' actions in executing the two leases to take effect consecutively, we can determine his apparent intention to continue to enjoy the benefits of the Open Mine Doctrine. Further, unlike *Nutter*, the grantor is still alive and was able to testify as to his intention to maintain his rights under the Open Mine Doctrine. Therefore, we hold that the Open Mine Doctrine permits Lias to make a second lease for the production of oil and gas under his rights as life tenant to the exclusion of the remainderman.

Appellants further contend that it was error to allow Lias to enter parol evidence as to his intent in reserving a life tenancy in the oil and gas. Parol evidence should not be admitted when the deed describing a real estate interest contains language which is clear and free from ambiguity. *Wysinski v. Mazzotta*, 325 Pa.Super. 128, 472 A.2d 680 (1984). In this case the interest created, a life tenancy in the oil and gas on the property, was not clear and free from ambiguity, as it was unclear what right would remain to develop oil and gas after the expiration of the first lease. The deed was silent on this point. Given the importance of the grantor's intent vis-a-vis the Open Mine Doctrine, Lias' testimony was material, relevant, and essential to a proper interpretation of the deed. Therefore,

the lower court did not err in allowing the admission of parol evidence.

Finally, appellants argue that the lower court erred in finding that there was insufficient proof of damages and that appellants failed to mitigate damages. It is appellants' contention that they suffered damage to their land by virtue of appellee's mining and drilling operations under the lease. Appellants claimed damages for the destruction of trees, insufficiency of backfilling, and their costs to reclaim the land. A figure of $12,500 was put forth by appellants as the total value of damages to the property.

■ With regard to damages for the destruction of timber, the lower court ruled that no such damages would be allowed due to appellants' failure to mitigate damages. Appellee had the initial burden to show that appellants could have minimized damages. *See APCL & K, Inc. v. Richer Communications, Inc.*, 241 Pa.Super. 396, 361 A.2d 762 (1976). This burden was met when the appellee showed that appellants failed to put the timber to some reasonable use for a three-year period after it was cut, stacked, and made available to appellants. Having the opportunity, appellants must mitigate damages. Since appellants made no such effort, and allowed the timber to rot and become worthless, no damages can be awarded for the destruction of timber.

■ Damages for other harm to the land caused by the alleged insufficient backfilling and reclamation by appellees cannot be awarded in this case. Appellants had the burden of proving their damages by a preponderance of the evidence. *Wright v. Buckeye Coal Co.*, 290 Pa.Super. 231, 434 A.2d 728 (1981). Any damages that are not proved are not recoverable. *Maxwell v. Schaefer*, 381 Pa. 13, 112 A.2d 69 (1955). In this case, although appellants alleged damage to their property, there was no evidence as to specific damages, and appellants did not testify as to reclamation costs. Appellants merely offered a general prayer for damages in the amount of $12,500. Appellants had a duty to establish

by evidence such facts as would furnish a basis for the legal assessment of damages according to some definite and legal rule. *Gordon v. Trovato*, 234 Pa.Super. 279, 338 A.2d 653 (1975). Our law requires not merely conjecture, but rather sufficient data from which damages can be assessed with reasonable certainty. *Macan v. Scandinavia Belting Company*, 264 Pa. 384, 107 A. 750 (1919); *Pratt v. Stein*, 298 Pa.Super. 92, 444 A.2d 674 (1982); *Gordon v. Trovato*, 234 Pa.Super. 279, 338 A.2d 653 (1975). While we do not require mathematical exactness, we cannot award damages by guess or speculation. There must be before us a reasonably fair basis for calculation. *See Kaczkowski v. Bolubasz*, 491 Pa. 561, 421 A.2d 1027 (1980). We find that appellants have failed to give the court a reasonable basis for the calculation of damages. Absent some specifics, a general prayer for $12,500 in damages invites us to award damages by speculation. Therefore, we find that the lower court properly refused to award damages on appellants' proof. Finding no error in the trial court's opinion, we affirm.

Judgment affirmed.

POPOVICH, J., files a concurring opinion.

POPOVICH, Judge, concurring:

I find the Majority's embarking on an analysis of the Open Mine Doctrine to be superfluous to the facts at bar. The question is: Why would not the Exception and Reservation Clause in Lias' Deed to Frye, and, in turn, Frye's Deed to the plaintiffs/appellants be sufficient to retain the life tenant's (Lias') right to extract the oil and gas as so reserved in the Deed?

A life estate arises when the conveyance, as is the case here, expressly limits the duration of the created estate in terms of the life of a person (Lias). Instantly, the grantor reserved to himself the use of the minerals on the property for his natural life. No one disputes the clarity with which the life estate was created, and the remaindermen's interest was postponed until an ascertainable life in being expired.

My reading of the Clauses in question leaves no doubt in my mind that Lias expressly and intentionally reserved to himself the right to extract the natural resources from the land in question. This reservation was plainly written so that all subsequent purchasers (grantees) would be on notice of the right reserved. Accordingly, I see no need to resort to the Open Mine Doctrine to determine the rights of the parties at bar.

On the question of damages, the law is quite clear as to the liabilities and responsibilities of one having a life estate; to-wit:

> His use and enjoyment of the premises is limited by the law of waste, that is, he is under a duty to refrain from any act which will diminish the value of the reversion or the remainder if such act is also, under all the circumstances, an unreasonable use of the premises.

Moynihan, Cornelius J., Introduction to the Law of Real Property 59 (1962); Smith and Boyer, Survey of the Law of Property 237–39 (1971).

The Cronans did not assert that the use of the land was "unreasonable" under the terms of the Deed. Accordingly, I would affirm the judgment of the court below.