2009 OK CIV APP 66

**Hugh McCRABB and Leona McCrabb, Plaintiffs/Appellants,**

v.

**CHESAPEAKE ENERGY CORPORATION and Chesapeake Operating, Inc., Defendants/Appellees.**

No. 106,093.

Court of Civil Appeals of Oklahoma, Division No. 1.

Aug. 5, 2009.

John Mac Hayes, Oklahoma City, OK, for Plaintiffs/Appellants.

Michelle P. Cullen, Oklahoma City, OK, for Defendants/Appellees.

## OPINION

ADAMS, Presiding Judge.

¶1 Hugh McCrabb and his mother, Leona McCrabb (collectively, Landowners) appeal a trial court order sustaining a summary adjudication motion filed by Chesapeake Energy Corporation and Chesapeake Operating, Inc. (collectively, Chesapeake) and granting them judgment in Landowners' action alleging Chesapeake violated the Oklahoma Surface Damages Act, 52 O.S.2001 318.2–318.9 (the Act). We affirm the order as to Leona McCrabb. However, we conclude the trial court erred as matter of law by ruling that Chesapeake was not required to either have a surface damage agreement with Hugh McCrabb or initiate court proceeding under the Act, and we reverse the order as to him.

██ ¶2 In determining whether summary adjudication was appropriate, we must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and affirm if there is no genuine issue as to any material fact and Chesapeake was entitled to judgment as a matter of law. *Perry v. Green,* 1970 OK 70, 468 P.2d 483. An order granting summary relief disposes of legal issues. *Brown v. Nicholson,* 1997 OK 32, 935 P.2d 319. An appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings. *Manley v. Brown,* 1999 OK 79, 989 P.2d 448. Therefore, our standard of review here is *de novo.*

¶3 Landowners are undivided owners of the surface estate of the North-half (N/2) of the Southeast Quarter (SE/4) and the Southeast Quarter (SE/4) of the Southeast Quarter (SE/4) of Section 9, Township 6 North, Range 18 East, Latimer County, Oklahoma. Chesapeake is both the driller and operator of the McCrabb # 4–9 oil and/or gas well (the Well), which is located in the Southeast Quarter (SE/4) of the same section.

¶4 On August 30, 2002, Chesapeake mailed separate notices of its intent to drill the Well to the Landowners' respective residences,[1] offering $2,500 for surface damages and enclosing a Surface Damage Release and Grant of Surface Easement (the Agreement) to review and sign if they approved. On September 6, 2002, Leona McCrabb executed the Agreement and mailed it to Chesapeake.

¶5 Hugh McCrabb received his notice on September 9, 2002, and "a few days" later, he notified Chesapeake's designated representative that he would not accept its $2,500 offer and instead desired to negotiate the amount. After learning his mother had already signed the Agreement but she did not understand it, he called Chesapeake, with her authority, to rescind the contract. Chesapeake subsequently mailed a $2,500 check to Leona McCrabb, which she never cashed or presented for payment. On November 30, 2002, Chesapeake entered the McCrabb's property in Latimer County to drill the Well.

¶6 Landowners' action against Chesapeake followed, in which they alleged Chesapeake failed to meet the Act's requirements because it willfully and knowingly entered their premises without any agreement in place with regard to surface damages or without filing a petition requesting the appointment of appraisers. Chesapeake specifically denied the allegations in its answer, and alleged the affirmative defenses of estoppel, release, and a prior agreement with Leona McCrabb.

---

1. Landowners' evidentiary materials include a copy of each notice, sent by certified mail, to Leona McCrabb at her address in Muskogee, Oklahoma, and to Hugh McCrabb at his address in Wilburton, Oklahoma.

¶ 7 Chesapeake moved for summary judgment, attaching portions of Leona McCrabb's deposition and a copy of the signed Agreement to support its argument that it did not violate the Act because an agreement for surface damages with only one co-tenant is all that is required. In opposing the motion, Landowners argued that the Agreement was verbally rescinded, Ms. McCrabb never cashed the check Chesapeake had sent her, and that Chesapeake had no surface damage agreement with Hugh McCrabb.

¶ 8 The trial court agreed with Chesapeake, and granted summary judgment in its favor after expressly finding that (1) based on the Agreement with Ms. McCrabb, Chesapeake was not required to enter into a surface damage agreement with her co-tenant, Hugh McCrabb, prior to entering the land, (2) the latter was entitled only to an accounting from Ms. McCrabb, (3) the Agreement was not rescinded, and (4) Chesapeake was not required to file a petition to appoint appraisers under the Act. Landowners' appeal followed.

¶ 9 As a preliminary matter, we note Landowners' Petition In Error raises errors only concerning the trial court's findings concerning the Act. Nothing in the summary of the case or allegations suggests that Landowners are asserting that there were controversies of fact or differing inferences from the undisputed facts which would preclude summary judgment on the their recission argument. Any issue concerning rescission is therefore waived. *See Booker v. Sumner,* 2001 OK CIV APP 22, 19 P.3d 904.

█ ¶ 10 Chesapeake's argument that compliance with the Act merely required it to have a surface damage agreement with one co-tenant is premised on its position that under "Oklahoma laws of co-tenancy," possession of one tenant in common is possession of all and as such permission of the other tenants in common is not necessary. To support its position, Chesapeake cites *Anderson v. Dyco Petroleum Corporation,* 1989 OK 132, 782 P.2d 1367, for the proposition that working interest owners in a well

are tenants in common who are each entitled to market the production of gas *without* the consent of other co-tenants, and *Enron Oil and Gas Co. v. Virgil Worth and Frieda Webb,* 1997 OK CIV APP 60, 947 P.2d 610, for the proposition that an operator does not need permission from all undivided mineral owners to conduct seismic operations.

█ ¶ 11 Both cases demonstrate the deficiency of Chesapeake's argument which focuses too narrowly on possession and consent,[2] without considering that a tenancy in common is a joint interest in which there is unity of possession, *but separate and distinct titles which are held independently of each other. De Mik v. Cargill,* 1971 OK 61, 485 P.2d 229. It further fails to consider that one co-tenant may neither act, claim in derogation of, lessen nor diminish the value or effect of the other co-tenant's right, title, interest or status in the land. *Matthews v. Matthews,* 1998 OK 66, 961 P.2d 831. These fundamental characteristics of a tenancy in common are clearly recognized in *Anderson v. Dyco Petroleum Corporation,* when the Court rejected the nonconsenting co-tenants' claim of conversion against a purchaser of gas under contract with another co-tenant, in part, because "[a] gas sales contract executed by a co-tenant *is limited* to his/her interest." (Emphasis added.) 1989 OK 132, ¶ 9, 782 P.2d at 1372 (quoting *Teel v. Public Service Co. of Oklahoma,* 1985 OK 112, ¶ 16, 767 P.2d 391, 396). The same limitation applies to a co-tenant of the surface or mineral estate.

¶ 12 More importantly, Chesapeake's summary judgment argument does not address the dispositive issue on appeal—whether the Act requires Chesapeake to either have a surface damage agreement with all interest owners of the surface or initiate court proceedings prior to entering the property. We find no Oklahoma authority on this issue, the resolution of which requires interpretation of the Act under the same *de novo* appellate review. *Wylie v. Chesser,* 2007 OK 81, 173 P.3d 64.

**2.** Chesapeake's possession argument is not supported by the evidentiary material, considering the addresses on its notices to Landowners.

¶ 13 The first step in statutory interpretation is to discern the Legislature's intent for the Act. As previously determined by the Oklahoma Supreme Court, the Act was intended to provide a mechanism to balance the conflicting interests of the owners of Oklahoma's two most important natural resources, the mineral estate and the surface. Its purpose is to promote the prompt payment of compensation to a surface owner whose land is taken for oil and gas exploration. The Act is a special proceeding, in the nature of a condemnation action, containing precise procedural requirements that are mandatory. *Ward Petroleum Corporation v. Stewart,* 2003 OK 11, 64 P.3d 1113.

¶ 14 It is undisputed in this matter that Chesapeake complied with § 318.3 of the Act, which provides, in relevant part, that "[b]efore entering upon a site for oil or gas drilling ... the operator shall give to the *surface owner* a written notice of his intent to drill containing a designation of the proposed location and the approximate date that the operator proposes to commence drilling." (Emphasis added.) Chesapeake's alleged violation of the Act is addressed in § 318.5(A), which provides that:

> *Prior to entering the site with heavy equipment,* the operator *shall* negotiate with the *surface owner* for the payment of any damages which may be caused by the drilling operation. *If the parties agree, and a written contract is signed,* the operator may enter the site to drill. *If agreement is not reached, or if the operator is not able to contact all parties,* the operator *shall* petition the district court in the county in which the drilling site is located for appointment of appraisers to make recommendations to the parties and to the court concerning the amount of damages, if any. *Once the operator has petitioned for appointment of appraisers, the operator may enter the site to drill.* (Emphasis added.)

¶ 15 The Act's reference to "the surface owner" with whom Chesapeake "shall negotiate" for the payment of surface damages, would appear to support its position. However, § 318.2(2) of the Act defines the term "surface owner" as "the owner or *owners* of record of the surface of the property on which the drilling operation is to occur." (Emphasis added.) The Legislature's definition is binding on the courts except where a contrary intention plainly appears. *Oliver v. City of Tulsa,* 1982 OK 121, 654 P.2d 607. We must consider the Act as a whole and not just individual provisions. *Bank of Oklahoma, N.A. v. Welco, Inc.,* 1995 OK CIV APP 43, 898 P.2d 172.

¶ 16 Chesapeake's argument would require us to ignore the Legislature's definition of "surface owner," which expressly includes the *plural* version of the term "owner." Finding no contrary intention in the Act as a whole, we are bound by the Act's specific definition of "surface owner." Based thereon, we conclude the Act clearly and unambiguously requires an operator to negotiate and obtain a signed surface damage agreement with all undivided interest owners/tenants in common of record or in the event an agreement can not be reached by all parties, to file a petition for appointment of appraisers pursuant to § 318.5(A).

¶ 17 As the undisputed evidentiary material demonstrates, Leona McCrabb and Hugh McCrabb each received a notice of intent to drill from Chesapeake whose "offer for surface damage compensation for the use of this location is $2,500.00." It also is undisputed that Hugh McCrabb timely notified Chesapeake that he rejected that offer and of his intent to negotiate the surface damages, which Chesapeake refused.

¶ 18 Based thereon, we conclude the trial court erred in finding as a matter of law that Chesapeake was neither required to have a surface damage agreement with Hugh McCrabb nor file a petition with the district court for appointment of appraisers. The trial court's summary judgment is affirmed as it relates to the Agreement with Leona McCrabb, but reversed as to Hugh McCrabb. The case is remanded for further proceedings in accordance with this opinion.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

HANSEN, J., and JOPLIN, J., concur.