2015 OK 18

In re DETACHMENT OF MUNICIPAL TERRITORY FROM the CITY OF ADA, OKLAHOMA, a Municipal Corporation

David B. Sherbert and Marsha Sherbert, husband and wife; Michael J. Williams and Amanda Williams, husband and wife; Nathan J. Dial and Tracy L. Dial, husband and wife; S. Bradley Williamson and Stacy Jill Williamson, husband and wife; and Buck Price Farm, an Oklahoma Limited Liability Company, Plaintiffs/Petitioners

v.

The City of Ada, Oklahoma, a Municipal Corporation, Defendant/Respondent.

No. 112,837.

Supreme Court of Oklahoma.

March 31, 2015.

As Corrected April 20, 2015.

Rehearing Denied June 29, 2015.

Jack Cadenhead, Seminole, Oklahoma, for Plaintiffs/Petitioners.

Frank Stout, The City of Ada, Oklahoma, for Defendant/Respondent.

## *OPINION*

WATT, J.:

¶1 The question before the Court is whether the Respondent, City of Ada, Oklahoma, fully complied with the Oklahoma annexation statutes when it annexed certain territory near its city limits. At issue is the construction of 11 O.S.2011 § 21–103(A) [1] and (B)(2) [2] and whether substantial compliance with the notice and consent provisions was sufficient. We hold that substantial compliance with the notice requirements is not sufficient under the applicable statutes in this case and reverse.

## PROCEDURAL BACKGROUND

¶2 On February 19, 2013, the City of Ada, Oklahoma (City or Respondent) passed Ordinance No. 13–02 to annex certain real property, located in Township 3 North, Range 6 East of the Indian Base and Meridian, Pontotoc County, Oklahoma, into its corporate city limits. Petitioners are residents of Pontotoc County, Oklahoma, who own property within the annexed territory. They sought to set aside the ordinance, and City denied their request. They then filed their Petition for Declaratory Judgment and in the Alternative, for Detachment of Municipal Territory, on May 7, 2013, seeking a determination that the City lacked jurisdiction to pass the ordinance due to lack of compliance with 11 O.S.2011 § 21–103. The trial court denied Petitioners' request for relief but filed its Order Certifying Interlocutory Order for Immediate Appeal, pursuant to 12 O.S.2011 § 952(b)(3),[3] on April 21, 2014. This appeal

1. A. Before the governing body of a city or town may annex any territory adjacent or contiguous to the city or town, it must obtain the written consent of the owners of at least a majority of the acres to be annexed to the municipality and provide for notice and a public hearing on the proposed annexation of the territory in the manner provided in subsection B of this section.

2. B.2. A copy of the notice of annexation shall be mailed by first-class mail to all owners of property to be annexed as shown by the current year's ownership rolls in the office of the county treasurer and to all owners of property abutting any public right-of-way that forms the boundary of the territory proposed to be annexed and to the Sales and Use Tax Division of the Oklahoma Tax Commission; **provided that the notice of annexation shall be mailed by certified mail to every person who owns a parcel of land of five (5) acres or more used for agricultural purposes....** [emphasis added].

3. 12 O.S.2011 § 952(b)(3):

followed.[4]

## FACTS

¶3 At the hearing on their petition on January 14, 2014, Petitioners alleged the City failed to provide notice by certified mail to owners of property of five acres or more used for agricultural purposes, which abuts the boundaries of the annexed territory. Certified mail "return receipt requested" was sent to all owners of property within the territory to be annexed.[5] They alleged the City provided only first class mail to those owners of abutting property, despite the use of the mandatory language "shall" in the statute.[6] In construing 11 O.S. § 21–103(B)(2), the trial court found it was ambiguous and ruled:

10. Legislative intent cannot be ascertained from a literal reading of the statutory language.

11. A party with actual notice of a proceeding is not prejudiced by failure to receive statutory notice.[7]

## STANDARD OF REVIEW

¶4 The issue in this case involves statutory interpretation. It is, therefore, a question of law, governed by a *de novo* standard of appellate review. *State ex rel. W.A. "Drew" Edmondson v. Native Wholesale Supply*, 2010 OK 58, 237 P.3d 199. When reviewing a trial court's legal rulings, this Court exercises plenary, independent and non-deferential authority. *Edmondson v. Native Wholesale Supply*, 2010 OK 58, ¶9, 237 P.3d at 205, citing *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶14, 859 P.2d 1081, 1083.

(b) The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof:
. . .
3. Any other order, which affects a substantial part of the merits of the controversy when the trial judge certifies that an immediate appeal may materially advance the ultimate termination of the litigation; provided, however, that the Supreme Court, in its discretion, may refuse to hear the appeal. . . .

4. The Court granted Petitioners' petition for certiorari on June 30, 2014. The record on appeal

## DISCUSSION

¶5 Only one sovereign power exists in state government: the State Legislature. *In re De–Annexation of Certain Real Property from the City of Seminole, (City of Seminole)*, 2004 OK 60, ¶10, 102 P.3d 120, 125–126. Municipalities are political subdivisions of the State and must conform to the State constitution and the general laws of the state. *City of Seminole*, at 126. The power of annexation for altering local governmental boundaries has been conferred upon municipalities by the State Legislature through the Oklahoma Municipal Code.[8] *City of Seminole*, at 126. It is a purely legislative function to determine whether property should or should not be annexed or detached from the corporate limits of a municipality. *In the Matter of the De–Annexation of Certain Real Property*, 1983 OK 44, 662 P.2d 1375. The primary judicial function in our review of municipal annexations is to ascertain whether the city has exercised its annexation power in a reasonable manner in compliance with state law, *City of Seminole*, at 128, within the scope of legislative authority. *In the Matter of the De–Annexation of Certain Real Property, supra*, at 1376; *W.E. George v. Town of Bearden*, 1985 OK CIV APP 5, 700 P.2d 1030. An annexation ordinance must recite jurisdictional facts. *Jones v. Oklahoma City*, 1952 OK 354, 250 P.2d 17. If it does, only the State can collaterally attack the ordinance. *Id.* If it does not, an interested party may attack its validity and show that jurisdictional facts did not exist. *Id.*, citing *Missouri–Kansas–Texas R. Co. v. Maltsberger*, 1941 OK 226, 116 P.2d 977, 189 Okl. 363.

## STATUTORY CONSTRUCTION

¶6 The City argues the statute requiring notice by certified mail is unclear, as

was received from the trial court on November 21, 2014.

5. Using "return receipt requested" is recommended for adequate proof of certified mail.

6. See notes 1 and 2 *supra*.

7. Trial court's order filed March 19, 2014.

8. See 11 O.S.2011 § 21–101, et seq.

found by the trial court, and that requiring only abutting property/agricultural use owners to receive certified mail is not logical or intended. However, it has not been argued that the Legislature was prohibited under our Constitution from requiring notice by certified mail to specific property owners.[9]

¶ 7 "The authority of the Legislature extends to all rightful subjects of legislation not withdrawn by the Constitution or in conflict therewith." See *Movants to Quash Multicounty Grand Jury Subpoena v. Dixon (Dixon)*, 2008 OK 36, ¶ 22, 184 P.3d 546, 553, citing *In re House Bill No. 145*, 1951 OK 288, ¶ 0, 205 Okla. 364, 237 P.2d 624, 625 (syl. no. 2 by the Court). This Court does not examine the Constitution to decide whether the Legislature is permitted to act, *Dixon*, *supra*, 184 P.3d at 553, citing *Tate v. Logan*, 1961 OK 136, 362 P.2d 670, only whether it is prohibited from acting. *Id.*, at 674–675. If there is any doubt, it should be resolved in favor of the validity of the Legislature's action; restrictions thereon should be strictly construed. *Id.*

¶ 8 Besides the Legislature's use of the words "shall be mailed by certified mail" near the reference to the owners of "five (5) acres or more used for agricultural purposes" in B(2), we consider the intent of the statute as a whole. See *Adams v. Fry*, 1951 OK 127, 230 P.2d 915. Consideration of subsection C of § 21–103,[10] along with subsection B(2), is instructive. Subsection C provides that adjacent[11] or contiguous[12] roadways or road right-of-ways "shall be considered a part and parcel to the territory to be annexed." As part and parcel of "territory to be annexed", future annexations will include these owners of abutting agricultural property.

¶ 9 The notice by publication "in a legally qualified newspaper of general circulation" of the proposed annexation "shall describe the **boundaries of the territory proposed to be annexed** by reference to a map, geographical locations, legal or physical description or other reasonable designation." [emphasis added]. § 21–103(B)(1). Thus, the publication notice does not alert every owner of property "abutting any public right-of-way that forms the boundary of the territory to be annexed". The boundaries described in the publication notice include references only to sections 14 and 15 of township 3N, Range 6E, and certainly does not describe parcels of land of five acres or more used for agricultural purposes. The obvious legislative intent is to discern who those owners are because land abutting their acreages will become part of the Ada, Oklahoma city limits. See § 21–103C. Notice by certified mail would allow the municipal authority to know if notice had been sent to, and received by, the appropriate owners. In addition to abutting agricultural owners in sections 14 and 15,[13] owners of property in sections 16 and 23, **which sections were not specifically mentioned** in the publication notice, have properties of five acres or more used for agricultural purposes and also abut the boundaries of the annexed territory.[14] Legislative intent to protect

9. The City argues 21–103(B)(2) does not specifically require any notice to property owners whose property abuts the proposed annexed territory, but own no agricultural property, and yet Petitioners argue notice by certified mail is required to owners whose property abuts the right-of-ways forming the boundaries of the proposed annexed territory. City contends it makes no sense to provide notice to owners abutting the right-of-ways but none to owners abutting the area to be annexed. However, there was no issue raised or evidence presented as to property owners in this category, and we will not address it.

10. C. Unless otherwise provided by law, a roadway or road right-of-way that is adjacent or contiguous to the territory to be annexed shall be considered a part and parcel to the territory to be annexed.

11. "Adjacent" is defined as: Close to; next to; lying near; adjoining. *The American Heritage Dictionary of the English Language, New College Edition.*

12. "Contiguous" is defined as: Sharing an edge or boundary; touching. Nearby; neighboring; adjacent. *The American Heritage Dictionary of the English Language, New College Edition.*

13. Those include: Melissa Smith (section 14); Marc G. & Mari B. Plumlee (section 14); and Gary C. & Sandra K. Curry (section 14).

14. Those include: James E. & Viola Dew Rev. Trust et al. (section 16); Joe Louis Troska (section 23); and Constance Beam (section 16). Massey D. Bates, Jr. & Rebecca Bates own property in section 16, but the evidence shows it is not used for agricultural purposes.

property owners such as these, who are affected by the annexation without actually being within the annexed territory, is demonstrated by the certified mail requirement.

¶ 10 While we find legislative intent to provide notice by certified mail to the **abutting** agricultural owners, we also hold the legislature intended no less than certified mail for the agricultural owners of five acres or more **within** the annexed territory. A legislative enactment must be construed in accordance with the plain ordinary meaning according to the import of the language used. *Smith v. Broken Arrow Public Schools, Independent School Dist. # 3*, 1983 OK CIV APP 19, 665 P.2d 858, 12 Ed. Law Rep. 152 (approved for publication by the Supreme Court), citing *In re Certification of Question of State Law*, 1977 OK 16, 560 P.2d 195. A court may not ignore the plain words of a statute. *Allgood v. Allgood*, 1981 OK 21, 626 P.2d 1323. The plain words of this statute provide that **"every person"** owning five acres or more used for agricultural purposes shall receive notice by certified mail.[15] With such inclusive language, the best interpretation is to apply it to both groups of property owners already mentioned in the statute.

¶ 11 The record is clear that the City of Ada did not send notice by certified mail to all owners of five acres or more of agricultural land abutting the boundaries of the annexed territory. The City did send notice, however, to such owners by first class mail. One such owner, Mr. Plumlee, who owns more than five acres of agricultural property in section 14, testified that he did not receive any kind of prior notice of the proposed annexation. If the City had utilized notice

by certified mail, it would have been obvious whether City had sent notice to Mr. Plumlee.[16] While the evidence submitted points only to Mr. Plumlee who did not receive notice, one property owner without notice is too many.

¶ 12 At the hearing on January 14, 2014, the City's attorney presented a document titled "Affidavit of Mailing" which was admitted as "Respondent's Exhibit 1". It certifies that on January 31, 2013, the City Attorney mailed the notice to all owners of property within the annexed territory by first-class mail and by certified mail. It also certifies that notice was mailed by first-class mail to all owners of property abutting any public right-of-way that forms the boundary of the territory proposed to be annexed.[17]

¶ 13 The court recognized that the statute requiring specific types of notice was not followed. Moreover, the court still declined to set aside the annexation after noting that one owner testified he received no notice.[18] As stated above, the court's order included a ruling that there was no prejudice to a party with actual notice of a proceeding, even if it is not the statutory notice. The court thus decided substantial compliance with the statutory notice provisions was sufficient, even though it found the statute was ambiguous. The problem with the court's ruling in this case is that it disregards the obvious legislative intent to provide a higher level of notice to specific groups of property owners: those who own five acres or more used for agricultural purposes **within the annexed territory,** as well as those owners of five acres or more used for agricultural purposes **whose**

15. The reference to the "Sale and Use Tax Division of the Oklahoma Tax Commission" immediately preceding "provided" in subsection (B)(2) is not being considered a "property owner" for purposes of this discussion.

16. The City suggests Mr. Plumlee didn't receive notice because he testified he doesn't open his mail. However, he testified that his secretary brings his business mail, or any mail that looks important, to him at his house from his office, which is also at his residence. However, he did not remember any mail containing notice of the annexation being brought to his house. He agreed that if he had received a certified letter, he would have opened it.

17. After the Affidavit of Mailing was admitted, the trial court commented:

> So the gist of this case is that the people you were supposed to send it to by certified mail you sent it by standard mail and the ones you sent it by standard mail was certified. Is that what that document is?

18. In overruling Petitioners' objection to admission of the Affidavit of Mailing on the alleged grounds that it had been previously requested during discovery, the court stated: "Overruled. I believe the three witnesses—well, the only witness that says he didn't—didn't was Mr. Plumlee, so the other two admitted getting it anyway."

property abuts the public right-of-way forming the boundary of the annexed territory. This higher level of notice is achieved by certified mail. Although the City has alleged there is no difference between a first-class letter and certified mail as to the mail recipient, there is a big difference as to the sender. Certified mail provides the sender with a mailing receipt and if requested, electronic verification of the delivery status.[19]

¶ 14 The personal notice requirements of annexation cases, as required by 11 O.S. § 21–103, is a matter of first impression in this Court. However, we have considered cases construing the provisions of 68 O.S. 2001 § 3106, relating to notice of tax resale deeds.[20] We held that the "[f]ailure to comply with the notice requirements deprives the county treasurer of jurisdiction," *Garcia v. Ted Parks, L.L.C.* 2008 OK 90, ¶ 15, 195 P.3d 1269, 1273, and rendered the tax deeds void. *Id.* at 1274. The issues of "substantial compliance" and "actual notice" are addressed, and we held constitutional due process must be upheld when a person's property is at stake.[21]

¶ 15 We, therefore, hold that strict compliance with the personal notice provisions of 11 O.S.2011 § 21–103(B)(2) is required, and we reverse the trial court's order denying Petitioners' request for a declaratory judgment that Ordinance 13–02 is invalid. This case is remanded to the trial court with directions to enter judgment in accordance with the views expressed in this opinion.[22]

¶ 16 **REVERSED AND REMANDED WITH DIRECTIONS.**

ALL JUSTICES CONCUR.

19. Domestic Mail Manual. Extra and Additional Services: Certified Mail 503.3.0

    3.1 Basic Standards
      3.1.1 Description
[C]ertified Mail provides the sender with a mailing receipt and, upon request, electronic verification that an article was delivered or that a delivery attempt was made. Customers can retrieve the delivery status as provided in 1.9. Certified Mail is dispatched and handled in transit as ordinary mail. Except for Priority Mail pieces with included insurance, no insurance coverage is provided when purchasing Certified Mail. USPS maintains a record of delivery (which includes the recipient's signature) for two years. Customers may obtain a delivery record by purchasing a return receipt (6.0), or if purchasing an electronic return receipt at the time of mailing, bulk proof of delivery (7.0).
    See 39 U.S.C.A. Supp.2005 § 111.1, which provides in pertinent part:
      [T]he U.S. Postal Service hereby incorporates by reference in this part, the Mailing Standards of the United States Postal Ser-

vice, Domestic Mail Manual, a looseleaf document published and maintained by the Postal Service.

20. See, *e.g., Garcia v. Ted Parks, L.L.C.* 2008 OK 90, ¶ 15, 195 P.3d 1269, 1273, *Wells Fargo Credit Corporation v. Ziegler,* 1989 OK 113, 780 P.2d 703, *Luster v. Bank of Chelsea,* 1986 OK 74, 730 P.2d 506, and *Jones v. Buford,* 1961 OK 20, 359 P.2d 232.

21. "The fact that a property owner has actual knowledge of a proceeding to obtain a tax deed does not relieve the person seeking the deed from complying with the applicable notice statutes. A tax deed issued under a defective notice is void." *Garcia v. Ted Parks, L.L.C.,* 2008 OK 90, ¶ 18, 195 P.3d 1269, 1275 (citations omitted).

22. Petitioners request an award of appellate fees and costs pursuant to 11 O.S.2011 § 21–103(fE). However, pursuant to 12 O.S. Supp.2012 § 696.4, such a request must be made by separate motion. The request is therefore denied.