HOBSON v. CIMAREX ENERGY CO.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:HOBSON v. CIMAREX ENERGY CO.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 HOBSON v. CIMAREX ENERGY CO.
2019 OK 58
Case Number: 116721
Decided: 09/17/2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 58, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 



TALEN PAUL HOBSON Plaintiff/Appellant,
v.
CIMAREX ENERGY CO., a Delaware corporation, Defendant/Appellee.

ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION IV

¶0 Plaintiff/Appellant is the vested remainderman of his father's life estate in the surface rights of land in Canadian County, Oklahoma (the "Property"). Defendant is the lessee of the Property's mineral interests. Plaintiff filed suit alleging that he is entitled to compensation for the surface damages caused by the drilling of wells and entitled to be notified of negotiations to determine surface damages because he is a "surface owner" within the meaning of the Surface Damages Act (SDA), 52 O.S. §§ 318.2 et seq. The defendants moved to dismiss for failure to state a claim arguing Plaintiff is not an owner within the meaning of the SDA, and even if he were an owner, his proper remedy is to seek compensation from the life tenant. The trial court sustained the Defendant's Motion to Dismiss finding the Remainderman is not a "surface owner" under the SDA. The Plaintiff appealed. The Court of Civil Appeals, Division IV, reversed the trial court's ruling interpreting "surface owner" under the SDA to include vested remainder interests. This Court granted certiorari.

OPINION OF THE COURT OF CIVIL APPEALS VACATED; ORDER OF THE TRIAL COURT AFFIRMED

A. Gabriel Bass and Jana L. Knott, Bass Law, Oklahoma City, Oklahoma, for Plaintiff/Appellant.
Bradley W. Welsh and Ryan A. Pittman, Gable Gotwals, Tulsa, Oklahoma, for Defendant/Appellee.


COMBS, J.:
¶1 The issue presented is whether a vested remainderman is a surface owner under the Surface Damages Act (SDA). We hold he is not. For purposes of the SDA, surface owner means one who holds a current possessory interest.
FACTS AND PROCEDURAL HISTORY
¶2 Through a quitclaim deed, Timothy Hobson, father of Talen Hobson, holds a present life estate in the surface rights of property located in Canadian County, Oklahoma. Talen Hobson holds a vested remainder interest in the surface rights to his father's life estate. Cimarex Energy Co. (Cimarex) is a mineral lessee of the Property. Before drilling, Cimarex reached an agreement with the life tenant regarding surface damages under the SDA. After drilling, Cimarex paid the life tenant according to that agreement.
¶3 Talen Hobson (Hobson) then sued Cimarex claiming he is entitled to compensation under the SDA. Hobson further alleges that as a surface owner under the SDA, Cimarex should have negotiated with him for surface damages as well. Cimarex responded that a future interest owner does not qualify as a surface owner under the SDA. Alternatively, Cimarex argued that if a future interest owner does qualify as a surface owner his proper cause of action is against the life tenant. The trial court held that a vested remainderman does not qualify as a surface owner under the SDA and dismissed the action with prejudice. On appeal, the Court of Civil Appeals disagreed, reasoning that the SDA focuses on ownership rather than possession. The appeals court reversed and remanded the case for further proceedings.
¶4 Cimarex filed a Petition for Writ of Certiorari with this Court on July 9, 2018. We granted certiorari on November 5, 2018, and the matter was assigned to this office on April 23, 2019.
STANDARD OF REVIEW
¶5 This Court's review of a dismissal for failure to state a claim is conducted de novo. Lockhart v. Loosen, 1997 OK 103, ¶ 4, 943 P.2d 1074, 1077; Washington v. State ex rel. Dep't of Corr., 1996 OK 139, ¶ 7, 915 P.2d 359, 361. Questions of statutory interpretation are pure questions of law and are reviewed de novo. Ward Petroleum Corp. v. Stewart, 2003 OK 11, ¶4, 64 P.3d 1113, 1115.
¶6 "The fundamental rule of statutory construction is to ascertain and give effect to legislative intent, and that intent is first sought in the language of the statute." YDF, Inc. v. Schlumar, Inc., 2006 OK 32, ¶6, 136 P.3d 656, 658. If there is an ambiguity, we apply the rules of statutory construction. Id. Ambiguity exists if there is more than one reasonable interpretation. Id. "In construing ambiguous statutory language . . . we look to the various provisions of the relevant legislative scheme to ascertain and give effect to the legislative intent and the public policy underlying that intent." Id.
ANALYSIS
¶7 This case concerns the interpretation of "surface owner" under the SDA. The SDA provides that "[p]rior to entering the site with heavy equipment, the operator shall negotiate with the surface owner for the payment of any damages which may be caused by the drilling operation." 52 O.S. §318.5(A). The SDA defines "surface owner" as "the owner or owners of record of the surface of the property on which the drilling operation is to occur." 52 O.S. §318.2(2).
¶8 The SDA modifies the common law relationship between mineral owners and surface owners. Ward Petroleum Corp., 2003 OK 11, § 5, 64 P.3d at 1115. We therefore liberally construe the statute to give effect to legislative intent and promote justice. 12 O.S. §2.
I. The Ordinary Meaning
¶9 The SDA does not define surface owner in a manner that further explains owner, so we look to the ordinary meaning of that term. Black's Law Dictionary defines "owner" as "[s]omeone who has the right to possess, use, and convey something."[1] (emphasis added). Merriam-Webster's dictionary defines "own" as "to have or hold as property: possess."[2] Although the United States Supreme Court stated "ownership does not always mean absolute dominion," the statement indicates that at times ownership does mean absolute dominion. Marsh v. State of Alabama, 326 U.S. 501, 506 (1946). The context of that case further illustrates that the common understanding of ownership includes absolute dominion. In that case, the Supreme Court distinguished the dominion of an owner whose property is open to the public in general, like a company-owned town, versus an owner of property not set up for an essentially public function, like a farm. Id. at 506-07. The Court reasoned that in cases where the property is open to the public in general, the owner does not have absolute dominion. But where the property is not set up for an essentially public function, the owner retains more dominion.
¶10 A vested remainder becomes possessory only when the preceding estate, here the father's life estate, comes naturally to its end. Chester H. Smith & Ralph E. Boyer, Survey of the Law of Property, 23, West Publishing Co. (2d ed. 1971). A remainder cannot cut short a preceding estate. Id. The lessee of a mineral lease is statutorily required to negotiate with the person or persons holding a current possessory interest in the surface of the land. Here, Talen Hobson would not hold a possessory interest until his father's life estate came to a natural end.
¶11 This interpretation of surface owner does not violate this State's precedent regarding the SDA. In McCrabb v. Chesapeake Energy Corp., the appellate court held that an operator is required to negotiate a surface damage agreement with all tenants in common. 2009 OK CIV APP 66, ¶16, 216 P.3d 312, 315. The court there focused on the SDA's use of the plural form of owner to reach its conclusion. Id. The unique aspect of tenants in common is that each tenant has unity of possession -- an undivided equal interest in current possession. De Mik v. Cargill, 1971 OK 61, ¶8, 485 P.2d 229, 223. Interpreting surface owner to require current possession does not disturb precedent.
II. Promoting Justice
¶12 Interpreting surface owner as requiring current possessory interest gives effect to legislative intent and promotes justice. Defining surface owner under the SDA as requiring a possessory interest does not modify the rights of life tenants and vested remaindermen. A life estate entering a new minerals lease must still seek the remainderman's consent because removal of minerals will certainly affect the corpus of the property. See Nutter v. Stockton, 1981 OK 30, 626 P.2d 861. Additionally, if the life tenant's transactions with the mineral leaseholder constitute an unreasonable injury to the remainderman's estate, the remainderman may bring a waste claim. McGinnity v. Kirk, 2015 OK 73, ¶9, 362 P.3d 186, 190. A remainderman maintains recourse for the definite removal of corpus and potential waste from all other actions by the life tenant. This interpretation of surface owner does not thwart the SDA's purpose of promoting rapid payment of compensation to a party whose land is taken after the taking occurs. Tower Oil & Gas Co., Inc. v. Paulk, 1989 OK 105. ¶ 6, 776 P.2d 1279, 1281.
CONCLUSION
¶13 The SDA's definition of surface owner is ambiguous. This Court is persuaded by the common meaning, expressed legislative intent, and interests of justice that the SDA's use of surface owner applies only to those holding a current possessory interest. Under the SDA, a mineral lessee must negotiate surface damages with those who hold a current possessory interest in the property. A vested remainderman does not hold a current possessory interest until the life estate has come to its natural end. The opinion of the Court of Civil Appeals is vacated. The order of the trial court is affirmed.
OPINION OF THE COURT OF CIVIL APPEALS VACATED; ORDER OF THE TRIAL COURT AFFIRMED
¶14 Edmondson, Colbert, and Combs, JJ., and Swinton, S.J., concur.
¶15 Kauger, J., concurs specially (by separate writing).
¶16 Darby, V.C.J., (by separate writing), Hudson, S.J., Kuehn, S.J., and Goree, S.J., dissent.
¶17 Gurich, C.J., and Winchester, J., recused.

FOOTNOTES

[1] Black's Law Dictionary (10th ed. 2010). The dissent, citing the fifth edition of Black's Law Dictionary, moves to the second paragraph of the definition after omitting portions of the first paragraph. Specifically that owner is "[t]he person in whom is vested the ownership, dominion, or title of property...which he has a right to enjoy and do with as he pleases..." Black's Law Dictionary 996 (5th ed. 1979) (emphasis added). Similarly, the dissent's definition of ownership omits the first portion stating it is a "[c]ollection of rights to use and enjoy property, including right to transmit it to others." Black's Law Dictionary 997 (5th ed. 1979). A vested remainderman has no right to use and enjoy the property until the life tenancy terminates.

[2] Merriam-Webster's Dictionary, own, available at https://www.merriam-webster.com/dictionary/own#h2.




KAUGER, J., concurring specially:
I concur that under this statute, a surface owner is the one who has current possession of the property. Here, the life tenant father conveyed to his remainderman son without any restriction or exemption. I write specially to acknowledge that grantors can avoid this problem by ensuring that the document creating the life estate restricts the part of the remainderman. For example, the grantor may reserve all income from a successful drilling operation without incurring waste.[1] Or a grantor might create a life estate and endow the life tenant with the power to consume or dispose of the corpus of the estate, or grant the life tenant the explicit power to commit waste, or clearly alienate minerals, oil or gas interests for development.[2] The person conveying the life estate has great discretion in any conditions they wish to attach to the life estate, provided that the conditions are allowed by law.
Another more recent alternative to the life estate is the Transfer on Death Deed, which went into effect on November 1, 2008, through Oklahoma's "Nontestamentary Transfer of Property Act." This law allows a "record owner" to use a "Transfer-On-Death Deed" to name another person to receive real estate without going through probate.[3] This preserves total control of the property during the grantor's lifetime, but accomplishes the same legal effect as a life estate with a remainderman.[4]
 

FOOTNOTES
 

[1] Nuttter v. Stockton, 1981 OK 30, ¶__, 626 P.2d 861 [Absent declarations to the contrary, cases generally accept that by granting a life estate on producing land (or on land he had leased for production), the grantor often intends for the life tenant to have the profits.] 5A Vernon's Okla. Forms 2d, Real Estate §4.65 provides:
In order to reserve a life estate the language in the habendum clause of a Warranty Deed is as follows:
And Grantor expressly reserves to the Grantor and Grantor's assigns a life estate in the property for Grantor's own life [OPTIONAL: , without liability for waste]. (Emphasis supplied.).
See also, Board of County Commissioners, Etc. v. Seber, 318 U.S 705, 63 S.Ct. 920, 87 L.Ed. 1094, affirming 130 F. 2d 663 (10th Cir. 1943) [Grantor by express language in conveyance retained to herself a life estate, together with the improvements and the rents and profits from the land,.] .

[2] See generally, Anthony J. Ford, The Life Estate and the Power to Commit Waste; Using a Power Analysis to Resolve Oil & Gas Title Issues Created by Future Interests, Vo. 2, Oil and Gas, Natural Resources, and Energy Journal 1 (2016).

[3] The current version of Title 58 O.S. Supp. 2015 §§1251-1258 provides: in pertinent parts:
Sections 1 through 8 of this act shall be known and may be cited as the "Nontestamentary Transfer of Property Act".
A. An interest in real estate may be titled in transfer-on-death form by recording a deed, signed by the record owner of the interest, designating a grantee beneficiary or beneficiaries of the interest. The deed shall transfer ownership of the interest upon the death of the owner. A transfer-on-death deed need not be supported by consideration. For purposes of the Nontestamentary Transfer of Property Act, an "interest in real estate" means any estate or interest in, over or under land, including surface, minerals, structures and fixtures.
B. The signature, consent or agreement of or notice to a grantee beneficiary or beneficiaries of a transfer-on-death deed shall not be required for any purpose during the lifetime of the record owner.
C. To accept real estate pursuant to a transfer-on-death deed, a designated grantee beneficiary shall execute an affidavit affirming:
1. Verification of the record owner's death;
2. Whether the record owner and the designated beneficiary were married at the time of the record owner's death; and
3. A legal description of the real estate.

D. The grantee shall attach a copy of the record owner's death certificate to the beneficiary affidavit. For a record owner's death occurring on or after November 1, 2011, the beneficiary shall record the affidavit and related documents with the office of the county clerk where the real estate is located within nine (9) months of the grantor's death, otherwise the interest in the property reverts to the deceased grantor's estate; provided, however, for a record owner's death occurring before November 1, 2011, such recording of the affidavit and related documents by the beneficiary shall not be subject to the nine-month time limitation. Notwithstanding the provisions of Section 26 of Title 16 of the Oklahoma Statutes, an affidavit properly sworn to before a notary shall be received for record and recorded by the county clerk without having been acknowledged and, when recorded, shall be effective as if it had been acknowledged.

[4] Title 85 O.S. Supp. 2015 §1257-58 provides:
A record owner who executes a transfer-on-death deed remains the legal and equitable owner until the death of the owner and during the lifetime of the owner is considered an absolute owner as regards creditors and purchasers.
A deed in transfer-on-death form, executed in conformity with the Nontestamentary Transfer of Property Act, shall not be considered a testamentary disposition and shall not be invalidated due to nonconformity with other provisions in Title 58 or Title 84 of the Oklahoma Statutes.




DARBY, V.C.J., with whom Hudson, S.J., Kuehn, S.J. and Goree, S.J., join, DISSENTING: 
¶1 I respectfully dissent. The aim of the Surface Damages Act (SDA), 52 O.S.2011, §§ 318.2--318.9, is "to balance the conflicting interests of the owners of two of our State's important natural resources: the mineral interest holder and the surface owner." Ward Petroleum Corp. v. Stewart, 2003 OK 11, ¶ 5, 64 P.3d 1113, 1115 (citing Davis Oil Co. v. Cloud, 1986 OK 73, 766 P.2d 1347). The critical question before us is therefore: Who is a surface owner? The SDA defines surface owner as "the owner or owners of record of the surface of the property on which the drilling operation is to occur." 52 O.S.2011, § 318.2(2). That definition simply and conclusively informs us that the surface owner is the record owner of the property. The majority, however, finds this definition ambiguous then construes it in a manner which excludes surface owners of record who have no current possessory interest in the property.
¶2 The legislature's definition is not ambiguous. In the absence of ambiguity or conflict with another enactment, we simply apply the statute according to the plain meaning. Broadway Clinic v. Liberty Mut. Ins. Co., 2006 OK 29, ¶ 15, 139 P.3d 873, 877. The Court presumes "that the legislature expressed its intent in a statute and that it intended what is expressed."Rath v. LaFon, 1967 OK 52, ¶ 4, 431 P.2d 312, 314 (quoting Hamrick v. George, 1962 OK 247, ¶ 7, 378 P.2d 324, 326).We thus look to the ordinary meaning of the terms that the legislature chose. Hall v. Galmor, 2018 OK 59, ¶ 45, 427 P.3d 1052, 1070. To ascertain the ordinary meaning and achieve full force and effect of each provision, we look to the text of both the provision at issue as well as related provisions in the same statute or legislative act. Id. ¶ 45, 427 P.3d at 1070-71."A court may not ignore the plain words of a statute." Sherbert v. City of Ada (In re Detachment of Mun. Terr.), 2015 OK 18, ¶ 10, 352 P.3d 1196, 1200.
¶3 The SDA was enacted in 1982. 1982 Okla. Sess. Laws 1062-66. Despite this fact, the majority now interprets the legislature's intent by relying on a definition of owner from the tenth edition of Black's Law Dictionary, which did not exist until 2014. For this reason, I reference only the fifth edition of Black's Law Dictionary, as it was the most recent version available at the time of enactment.
¶4 This more appropriate version defines owner as:
The person in whom is vested the ownership, dominion, or title of property . . . .
The . . . meaning is to be gathered from the connection in which it is used, and from the subject-matter to which it is applied. The primary meaning of the word as applied to land is one who owns the fee and who has the right to dispose of the property, but the term also includes one having a possessory right to land . . . .
The term "owner" is used to indicate a person in whom one or more interests are vested for his own benefit.
Black's Law Dictionary 996 (5th ed. 1979) (emphasis added). Additionally, the fifth edition defines record owner as "the owner of record, not the owner described in the tax roll; the owner of the title at time of notice." Id. at 997. The SDA lacks any limiting language to suggest that it should not encompass all surface record owners. In this case, Timothy is record owner of a life estate under Oklahoma law.[1] See 60 O.S.2011, § 22(2). And Talen is record owner of the fee simple remainder. See id. §§ 23, 30, 35. They are both within the SDA's definition of surface owner.
¶5 Even assuming, arguendo, that the SDA definition of surface owner is ambiguous and open to reasonable interpretation, the vested remainderman of record should not be excluded. The majority asserts that the common understanding of ownership includes absolute dominion. But definitions from both Webster's New International Dictionary and Black's Law Dictionary suggest otherwise. Webster's defines owner as "one who has legal or rightful title, whether the possessor or not." Webster's New Int'l Dictionary 1745 (2d ed. 1959). Likewise, Black's explains that
[o]wnership of property is either absolute or qualified. The ownership of property is absolute when a single person has the absolute dominion over it, and may use it or dispose of it according to his pleasure, subject only to general laws. The ownership is qualified when it is shared with one or more persons, when the time of enjoyment is deferred or limited, or when the use is restricted.
Ownership, Black's Law Dictionary 997 (5th ed. 1979) (citation omitted).
¶6 The majority focuses on the fact that the remainderman's ownership is qualified -- meaning his possessory interest in the property is deferred -- and ignores that the essence of the relationship between a life tenant and remainderman is that neither has absolute dominion over the estate. See Welborn v. Tidewater Associated Oil Co., 217 F.2d 509, 510-11 (10th Cir. 1954).[2] While the remainderman has no current possessory interest, the life tenant has no ability to alienate title beyond his or her life and is restricted from using the property in any way that permanently diminishes its value. See Lawley v. Richardson, 1924 OK 144, ¶ 6, 223 P. 156, 157-58.[3] Both are record owners with qualified ownership.
¶7 The legislature made no effort to omit vested remaindermen or owners with deferred possessory interest from the definition of surface owner, and it is improper for this Court to do so in its place today. Indeed, "[t]his Court does not read exceptions into a statute nor may we impose requirements not mandated by the [l]egislature." Cox v. State ex rel. Okla. Dep't of Hum. Servs., 2004 OK 17, ¶ 26, 87 P.3d 607, 617. Adding a current possessory interest requirement does not give effect to the legislature's intent. See 12 O.S.2011, § 2.
¶8 The SDA was established to promptly compensate surface owners for damages which may result from oil and gas exploration. YDF, Inc. v. Schlumar, Inc., 2006 OK 32, ¶ 10, 136 P.3d 656, 659. It follows, therefore, that the SDA aims to compensate all owners with an interest in the surface estate -- specifically to provide compensation when a drilling operation directly threatens to deplete a surface owner's interest. A vested remainderman fits this criteria as he has a damageable and alienable interest in the surface, which has market value. See 60 O.S.2011, § 30; see also Bonebrake v. McNeill, 1971 OK 146, ¶ 11, 491 P.2d 269, 272.
¶9 The fact that the SDA's provisions do not discriminate amongst types of damages a surface owner may recover is also an indication that a remainderman can recover for potential damages so long as the corpus may suffer an injury. The SDA mandates "payment of any damages which may be caused by the drilling operation." 52 O.S.2011, § 318.5(A) (emphasis added); see also id. § 318.5(C). This Court has found that the proper measure of all damages under the SDA is the diminution of the fair market value of the surface estate resulting from the drilling operation. Ward, 2003 OK 11, ¶ 6, 64 P.3d at 1115 (recognizing these damages as appropriate in condemnation-type actions).
¶10 Recoverable temporary damages include the cost of restoring the land to its former condition as well as compensation for use, but only if that amount is less than the diminution in fair market value of the land. Houck v. Hold Oil Corp., 1993 OK 166, ¶ 33, 867 P.2d 451, 460. Permanent damages include such things as the use of excess land for the well site, construction of excess roads, or irreparable damage caused by pollution. See id. ¶¶ 35, 37, 867 P.2d at 461 (citation omitted). These descriptions show that such damages may affect the corpus and not just the income.[4]
¶11 There is no question that a vested remainderman possesses a right to compensation for the diminution in value of the corpus of the estate. 41 O.S.2011, § 22; 60 O.S.2011, § 63.[5] Even as the majority acknowledges that life tenants must seek the remainderman's consent in order to enter a mineral lease (because it affects the corpus), see Nutter v. Stockton, 1981 OK 30, ¶ 1, 626 P.2d 861, 862, it nonetheless ignores that any diminution in fair market value of the property likewise affects the corpus and therefore the remainderman. A vested remainderman is exactly who the legislature intended to compensate under the SDA -- a surface owner whose vested interest in the corpus has or likely will be damaged by an operator's drilling.
¶12 Only "in the rare case when literal construction produces a result demonstrably at odds with legislative intent" do we diverge from the plain meaning of a statute. Samman v. Multiple Inj. Tr. Fund, 2001 OK 71, ¶ 13, 33 P.3d 302, 307. This is not one of those rare cases. The legislature has not manifested an intention to exclude vested remaindermen from the SDA definition of surface owner, and neither should we. This Court should apply the ordinary meaning of surface owner gathered from the statutory definition, the connection in which it is used in the SDA, and the subject-matter to which it is applied.
¶13 While the majority opinion upholds the SDA's purpose of promoting prompt compensation to the life tenant, it prevents that purpose for the vested remainderman. Today's result could have been avoided by simply allowing this remainderman his statutorily granted seat at the negotiation table. For all of the above reasons, I respectfully dissent.

FOOTNOTES

[1] Both the life tenant and remainderman received their interests in this property via the same quit claim deed from a third party.

[2] Regarding the rights of life tenant and remainderman mineral owners:
It is well settled that a remainderman may not make an oil and gas lease to permit immediate exploration and production without the consent of the life tenant. Likewise, a life tenant cannot drill new oil or gas wells, or lease the land to others for that purpose. A life tenant and the remainderman may lease the land by a joint lease and they may agree as to the division of the rents and royalties. In the absence of such agreement, the life tenant is not entitled to any part of the royalties, but is entitled only to the income from such royalties.
Welborn, 217 F.2d at 510-11 (emphasis added) (footnotes omitted).

[3] A life tenant is entitled to the full use and benefit of the property, but he is restricted in this use, so that those who are to follow him in possession shall not take the property permanently diminished in value, by his failure to do that which an ordinarily prudent man would do in the preservation of his own property . . . and which have the effect of diminishing permanently the value of the future estate.
Lawley, 1924 OK 144, ¶ 6, 223 P. at 157-58.

[4] The remainderman owns the corpus subject to a deferred right of possession. See Barnes v. Keys, 1912 OK 485, ¶ 2, 127 P. 261, 263.

[5] "A person seized of an estate in remainder or reversion may maintain an action for waste or trespass, for injury to the inheritance, notwithstanding an intervening estate for life or years." 41 O.S.2011, § 22. "A person having an estate in fee, in remainder, or reversion, may maintain an action for any injury done to the inheritance, notwithstanding an intervening estate for life or years . . . ." 60 O.S.2011, § 63.
 




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2009 OK CIV APP 66, 216 P.3d 312, McCRABB v. CHESAPEAKE ENERGY CORP.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 73, 766 P.2d 1347, 57 OBJ 2885, Davis Oil Co. v. Cloud
Discussed
 1989 OK 105, 776 P.2d 1279, 60 OBJ 1728, Tower Oil & Gas Co., Inc. v. Paulk
Discussed
 1993 OK 166, 867 P.2d 451, 65 OBJ 23, Houck v. Hold Oil Corp.
Discussed
 1996 OK 139, 915 P.2d 359, 67 OBJ 1339, WASHINGTON v. STATE ex rel. DEPT. OF CORRECTIONS
Discussed
 1997 OK 103, 943 P.2d 1074, 68 OBJ 2550, LOCKHART v. LOOSEN
Discussed
 2001 OK 71, 33 P.3d 302, 72 OBJ 2703, SAMMAN v. MULTIPLE INJURY TRUST FUND
Discussed
 1962 OK 247, 378 P.2d 324, HAMRICK v. GEORGE
Discussed
 1967 OK 52, 431 P.2d 312, RATH v. LaFON
Discussed
 1924 OK 144, 223 P. 156, 101 Okla. 40, LAWLEY v. RICHARDSON
Discussed at Length
 1971 OK 61, 485 P.2d 229, DE MIK v. CARGILL
Discussed
 1971 OK 146, 491 P.2d 269, BONEBRAKE v. McNEILL
Discussed
 2003 OK 11, 64 P.3d 1113, WARD PETROLEUM CORP. v. STEWART
Discussed at Length
 2004 OK 17, 87 P.3d 607, COX v. STATE ex rel. DEPT. OF HUMAN SERVICES
Discussed
 2006 OK 29, 139 P.3d 873, BROADWAY CLINIC v. LIBERTY MUTUAL INSURANCE CO.
Discussed
 2006 OK 32, 136 P.3d 656, YDF, INC. v. SCHLUMAR, INC.
Discussed at Length
 2015 OK 18, 352 P.3d 1196, IN RE: DETACHMENT OF MUNICIPAL TERRITORY FROM THE CITY OF ADA
Discussed
 2015 OK 73, 362 P.3d 186, McGINNITY v. KIRK
Discussed
 2018 OK 59, 427 P.3d 1052, HALL v. GALMOR
Discussed
 1981 OK 30, 626 P.2d 861, Nutter v. Stockton
Discussed at Length
 1912 OK 485, 127 P. 261, 36 Okla. 6, BARNES v. KEYS
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2, Common Law to Remain in Force in Aid of General Statutes
Discussed
Title 41. Landlord and Tenant
 Cite
Name
Level

 41 O.S. 22, Action for Waste or Trespass by Remainderman
Discussed
Title 52. Oil and Gas
 Cite
Name
Level

 52 O.S. 318.2, Definitions
Discussed at Length
 52 O.S. 318.5, Negotiating Surface Damages - Appraisers - Report and Exceptions Thereto - Jury Trial
Discussed
Title 60. Property
 Cite
Name
Level

 60 O.S. 22, Classification as to Duration
Cited
 60 O.S. 30, Remainder
Cited
 60 O.S. 63, Action for Injury to Inheritance
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA